No. 21-60312

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JACKSON MUNICIPAL AIRPORT AUTHORITY; BOARD OF
COMMISSIONERS OF THE JACKSON MUNICIPAL AIRPORT AUTHORITY,
each in his or her official capacity as a Commissioner on the Board of
Commissioners of the Jackson Municipal Airport Authority, DOCTOR ROSIE L.
T. PRIDGEN, in her official capacity as a Commissioner on the Board of
Commissioners of the Jackson Municipal Airport Authority; REVEREND JAMES
L. HENLEY, JR., in his official capacity as a Commissioner on the Board of
Commissioners of the Jackson Municipal Airport Authority; LAWANDA D.
HARRIS, in her official capacity as a Commissioner on the Board of
Commissioners of the Jackson Municipal Airport Authority; VERNON W.
HARTLEY, SR., in his official capacity as a Commissioner on the Board of
Commissioners of the Jackson Municipal Airport Authority; EVELYN O. REED,
in her official capacity as a Commissioner on the Board of Commissioners of the
Jackson Municipal Airport Authority; DOCTOR ROSIE L. T. PRIDGEN,
individually as citizens of the City of Jackson, MS, on behalf of themselves and all
others similarly situated; LAWANDA D. HARRIS, individually as citizens of the
City of Jackson, MS, on behalf of themselves and all others similarly situated;
VERNON W. HARTLEY, SR., individually as citizens of the City of Jackson,
MS, on behalf of themselves and all others similarly situated; EVELYN O. REED,
individually as citizens of the City of Jackson, MS, on behalf of themselves and all
others similarly situated; JAMES L. HENLEY, JR., individually as citizens of the
City of Jackson, MS, on behalf of themselves and all others similarly situated,

Intervenors – Appellees

v.

JOSH HARKINS; DEAN KIRBY; PHILLIP MORAN; CHRIS CAUGHMAN;
NICKEY BROWNING; JOHN A. POLK; MARK BAKER; ALEX MONSOUR,

Respondents – Appellants

On Appeal from the United States District Court for the Southern District of
Mississippi;
USDC No. 3:16-cv-00246-CWR-FKB

# PETITION FOR REHEARING EN BANC

Michael B. Wallace (MSB # 6904)
Charles E. Cowan (MSB # 104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi  39205-0651
mbw@wisecarter.com
cec@wisecarter.com
*Counsel for Respondents-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualifications or recusal.

a. **Respondents – Appellants**

    i. Josh Harkins, Member, Mississippi State Senate
    ii. Dean Kirby, Member, Mississippi State Senate
    iii. Philip Moran, Member, Mississippi State Senate
    iv. Chris Caughman, Member, Mississippi State Senate
    v. Nickey Browning, former Member, Mississippi State Senate
    vi. John A. Polk, Member, Mississippi State Senate
    vii. Mark Baker, former Member, Mississippi House of Representatives
    viii. Alex Monsour, former Member, Mississippi House of Representatives

*The following attorneys have appeared on behalf of Respondents – Appellants either before this Court or in the District Court:*

Michael B. Wallace (MSB # 6904)
Charles E. Cowan (MSB # 104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39205-0651
mbw@wisecarter.com
cec@wisecarter.com

b. **Intervenors – Appellees**

    i. Jackson Municipal Airport Authority
    ii. Board of Commissioners of the Jackson Municipal Airport Authority, each in his or her official capacity as a Commissioner on the Board of Commissioners of the Jackson

Municipal Airport Authority

iii. Reverend James L. Henley, Jr., in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority

iv. Lawanda D. Harris, in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority

v. Vernon W. Hartley, Sr., in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority

vi. Evelyn O. Reed, in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority

vii. Robert Martin, in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority

viii. Lucius Wright, in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority

ix. Reverend James L. Henley, Jr., individually and as a citizen of the City of Jackson, MS, on behalf of himself and all others similarly situated

x. Lawanda D. Harris, individually and as a citizen of the City of Jackson, MS, on behalf of herself and all others similarly situated

xi. Vernon W. Hartley, Sr., individually and as a citizen of the City of Jackson, MS, on behalf of himself and all others similarly situated

xii. Evelyn O. Reed, individually and as a citizen of the City of Jackson, MS, on behalf of herself and all others similarly situated

xiii. Robert Martin, individually and as a citizen of the City of Jackson, MS, on behalf of himself and all others similarly situated

xiv. Lucius Wright, individually and as a citizen of the City of Jackson, MS, on behalf of himself and all others similarly situated

*The following attorneys have appeared, either before this Court or in the District Court, on behalf of Appellees Jackson Municipal Airport Authority, Board of Commissioners of the Jackson Municipal Airport Authority, Rev. James L. Henley Jr., LaWanda D. Harris, Mr. Vernon W. Hartley Sr., Evelyn O. Reed, Robert Martin and Lucius Wright each in his or her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority:*

Fred Banks, Jr., Bar No. 1733
LaToya C. Merritt, Bar No. 100054
Nicholas F. Morisani, Bar No. 104970
Arthur Martin Edwards, IV
PHELPS DUNBAR, LLP
Post Office Box 16114
Jackson, Mississippi 39236-6114
Telephone: (601) 352-2300
Facsimile: (601) 360-9777
Fred.Banks@phelps.com
LaToya.Merritt@phelps.com
Nick.Morisani@phelps.com

John Walker, Bar No. 6883
Kevin B. Bass, Bar No. 103968
WALKER GROUP, PC
Post Office Box 22849
Jackson, Mississippi 39225-2849
Telephone: (601) 948-4589
Facsimile: (601) 354-2507
jwalker@walkergrouppc.com
kbass@walkergrouppc.com

Austin P. Anderson
Scott P. Lewis
ANDERSON & KRIEGER, LLP
50 Milk Street, 21st Floor
Boston, MA 03109
aanderson@andersonkreiger.com
slewis@andersonkreiger.com

*The following attorneys have appeared, either before this Court or in the District Court, on behalf of Intervenors LaWanda D. Harris, Mr. Vernon W. Hartley Sr., and Evelyn O. Reed, Robert Martin, and Lucius Wright each individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated:*

Tylvester Goss, Bar No. 4920
GOSS & WILLIAMS, PLLC
1441 Lakeover Road
Jackson, Mississippi 39206
Telephone: (601) 981-2800
Facsimile: (601) 981-7979
Email: tgoss@dgwlaw.com

**c.  <u>Plaintiffs below</u>**

    i.  Tony T. Yarber, in his official capacity as Mayor of the City of Jackson

    ii.  Melvin I. Priester, Jr., in his official capacity as counselperson of the City of Jackson

    iii.  Tyrone Hendrix, in his official capacity as counselperson for the City of Jackson

    iv.  Ashby Foote, in his official capacity as counselperson for the City of Jackson

    v.  Kenneth I. Stokes, in his official capacity as counselperson for the City of Jackson

    vi.  De'Keither Stamps, in his official capacity as counselperson for the City of Jackson

    vii.  Charles H. Tillman, in his official capacity as counselperson for the City of Jackson

    viii.  Margaret Barrett-Simon, in her official capacity as counselperson for the City of Jackson

    ix.  Tony T. Yarber, individually as a citizen of Jackson, Mississippi, on behalf of himself and all others similarly situated

    x.  Melvin I. Priester, Jr., individually as a citizen of Jackson, Mississippi, on behalf of himself and all others similarly

situated

xi.   Tyrone Hendrix, individually as a citizen of Jackson,
      Mississippi, on behalf of himself and all others similarly
      situated

xii.  Ashby Foote, individually as a citizen of Jackson, Mississippi,
      on behalf of himself and all others similarly situated

xiii. Kenneth I. Stokes, individually as a citizen of Jackson,
      Mississippi, on behalf of himself and all others similarly
      situated

xiv.  De'Keither Stamps, individually as a citizen of Jackson,
      Mississippi, on behalf of himself and all others similarly
      situated

xv.   Charles H. Tillman, individually as a citizen of Jackson,
      Mississippi, on behalf of himself and all others similarly
      situated

xvi.  Margaret Barrett-Simon, individually as a citizen of Jackson,
      Mississippi, on behalf of herself and all others similarly situated

*The following attorneys have appeared, either before this Court or in
the District Court, on behalf of Intervenors Tony T. Yarber, Mayor of
the City of Jackson; Melvin V. Priester, Jr., Ashby Foote, Kenneth I.
Stokes, De'Keither Stamps, Charles Tillman, Tyrone Hendrix, and
Margaret Barrett-Simon, all in their official capacities as elected
members of the City Council of the City of Jackson, Mississippi, from
their respective wards:*

Monica D. Joinder, Bar No. 102154
Gail W. Lowery, Bar No. 1460
Kristen Blanchard, Bar No. 103841
James Anderson
LaShundra B. Jackson
Claire Barker
OFFICE OF THE CITY ATTORNEY
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi  39205
Telephone: (601) 960-1799
Facsimile: (601) 960-1756

mjoiner@city.jackson.ms.us
glowery@city.jackson.ms.us
kblanchard@city.jackson.ms.us
janderson@city.jackson.ms.us

*The following attorney has appeared, either before this Court or in the District Court, on behalf of Intervenor Tony T. Yarber, individually as a citizen of the City of Jackson, Mississippi, on behalf of himself and all others similarly situated:*

Kimberly Banks
P.O. Box 12303
Jackson, Mississippi 39236-2303
Telephone: (601) 609-6732
Facsimile: (855) 708-0677
kimcelestejax@aol.com

*The following attorneys have appeared, either before this Court or in the District Court, on behalf of Intervenors Melvin V. Priester, Jr., Ashby Foote, Kenneth I. Stokes, De'Keither Stamps, Charles Tillman, Tyrone Hendrix, and Margaret Barrett-Simon, individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated:*

Everett T. Sanders MSB# 6443
Aisha A. Sanders MSB# 104949
SANDERS LAW FIRM PLLC
604 Franklin Street
P.O. Box 565
Natchez, Mississippi 39121-0565
Telephone: (601) 445-5570
Fax: (601) 445-0777
esanders@sanlaw.net

**d.** **Defendants below**

  i. Governor Dewey Philip "Phil" Bryant, in his Official Capacity as Governor of the State of Mississippi

  ii. Lieutenant Governor Tate Reeves, in his Official Capacity as

Lieutenant Governor of the State of Mississippi
iii. Madison County, Mississippi
iv. Rankin County, Mississippi

*The following attorneys have appeared, either before this Court or in the District Court, on behalf of Defendant Governor Dewey Philip "Phil" Bryant:*

Justin L. Matheny (Bar No. 100754)
Krissy C. Nobile (Bar No. 103577)
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, Mississippi  39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
jmath@ago.state.ms.us
knobi@ago.state.ms.us

Whitney H. Lipscomb (Bar No. 104326)
OFFICE OF GOVERNOR PHIL BRYANT
550 High Street
Jackson, Mississippi  39201
Telephone: (601) 359-3150
Facsimile: (601) 359-3741
*whitney.lipscomb@governor.ms*

*The following attorneys have appeared, either before this Court or in the District Court, on behalf of Defendant Lieutenant Governor Tate Reeves:*

Justin L. Matheny (Bar No. 100754)
Krissy C. Nobile (Bar No. 103577)
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, Mississippi  39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
jmath@ago.state.ms.us
knobi@ago.state.ms.us

P. Ryan Beckett
Charles E. Griffin
Phillip B. Abernathy
BUTLER SNOW LLP
P.O. Box 6010
Ridgeland, Mississippi  39158-6010

*The following attorneys have appeared, either before this Court or in
the District Court, on behalf of Defendant Madison County,
Mississippi:*

Mike Espy
MIKE ESPY, PLLC
4450 Old Canton Road, Suite 205
Jackson, MS 39211
mike@mikespy.com

Katherine Bryant Snell
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi  39130

*The following attorneys have appeared, either before this Court or in
the District Court, on behalf of Defendant Rankin County, Mississippi*

Craig Lawson Slay
RANKIN COUNTY BOARD OF SUPERVISORS
211 East Government Street, Suite A
Brandon, Mississippi  39042

Leland Kyle Williams
William Trey E. Jones, III
Scott Fuller Singley
Matthew W. Allen
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
P.O. Drawer 119
Jackson, Mississippi  39205-0119

*s/Michael B. Wallace*
Attorney of Record for Respondents – Appellants
DATE:        June 14, 2023

## FEDERAL RULE 35(b)(1) STATEMENT

This proceeding involves one or more questions of exceptional importance as to which a panel of this Court has divided. Accordingly, the following questions of exceptional importance merit *en banc* review.

1.  In finding jurisdiction over claims by members of the Board of Commissioners of the Jackson Municipal Airport Authority to challenge a Mississippi statute which treats all Commissioners equally, the opinion of the majority of the panel conflicts with *Raines v. Byrd*, 521 U.S. 811 (1997), as applied by at least three other Courts of Appeals: *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022); *Maloney v. Murphy*, 984 F.3d 50 (D.C. Cir. 2020), *cert. granted*, No. 22-425, 2023 WL 3440565 (U.S. May 15, 2023); and *Kerr v. Hickenlooper*, 824 F.3d 1207, 1216 (10th Cir. 2016).

2.  The opinion of the majority of the panel requiring current and former members of the Mississippi Senate and House of Representatives to compile a privilege log of documents sought by subpoena, notwithstanding legislative privilege, conflicts with *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015), and *In re North Dakota Legislative Assembly*, -- F.4th -- , 2023 WL 3831550 (8th Cir. June 6, 2023)

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS…………………………….…………i

FEDERAL RULE 35(b)(1) STATEMENT ................................................................ x

TABLE OF AUTHORITIES.......................................................................... xv

STATEMENT OF THE ISSUES MERITING EN BANC CONSIDERATION ..... 1

STATEMENT OF THE COURSE OF THE PROCEEDINGS AND
DISPOSITION OF THE CASE ................................................................... 1

STATEMENT OF NECESSARY FACTS ................................................... 4

ARGUMENT AND AUTHORITIES ........................................................... 4

    I.     THE COMMISSIONERS LACK STANDING TO ASSERT A
          CLAIM OF INTENTIONAL RACIAL DISCRIMINATION ............. 5

          A.    Any injury is institutional, not particularized as to the
               Commissioners ...................................................................... 5

          B.    Commissioners Wright and Martin lack standing to
               pursue the racial discrimination claim asserted
               by their predecessors in office...................................... 8

    II.    THE DECISION TO REQUIRE THE LEGISLATORS TO
          PREPARE A PRIVILEGE LOG CONFLICTS WITH
          *HUBBARD* AND *NORTH DAKOTA* AND IS IN TENSION
          WITH *LA UNION*.................................................................. 10

CONCLUSION .......................................................................... 17

CERTIFICATE OF SERVICE.................................................... 19

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ......... 20

# TABLE OF AUTHORITIES

## CASES                                                              Page(s)

*In re Bryant*, 745 Fed. Fed. Appx. 215 (5th Cir. 2018) ........................................... 14

*E.E.O.C. v. Washington Suburban Sanitary Comm'n*,
    631 F.3d 174 (4th Cir. 2011).............................................................................. 15

*Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012)................................................ 13

*In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015)................................................*passim*

*Jackson Mun. Airport Auth. v. Harkins*,
    67 F.4th 678 (5th Cir. 2023) .......................................................................*passim*

*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish Gov't*,
    849 F.3d 615 (5th Cir. 2017)...................................................................... 16, 17

*Kerr v. Hickenlooper*,
    824 F.3d 1207 (10th Cir. 2016)....................................................................... x, 7

*La Union del Pueblo Entero v. Abbott*,
    -- F.4th --, 2023 WL 3494770 (5th Cir. May 17, 2023) ........................*passim*

*Louisiana Acorn Fair Hous. v. LeBlanc*,
    211 F.3d 298 (5th Cir. 2000) ............................................................................ 9

*Maloney v. Murphy*,
    984 F.3d 50 (D.C. Cir. 2020), *cert. granted*, No. 22-425,
    2023 WL 3440565 (U.S. May 15, 2023) ................................................. x, 7, 8

*Miller v. Transamerican Press, Inc.*,
    709 F.2d 524 (9th Cir. 1983)........................................................................... 16

*In re North Dakota Legislative Assembly*,
    -- 4th --, 2023 WL 3831550 (8th Cir. June 6, 2023)............................*passim*

*Powell v. McCormack*, 395 U.S. 486 (1969) ............................................................ 6

*Raines v. Byrd*, 521 U.S. 811 (1997)................................................................*passim*

*Smith v. Hosemann*, 2022 WL 2168960 (S.D.Miss. May 23, 2022),
    *appeal dismissed*, 143 S. Ct. 770 (2023) ........................................................ 15

*Stallworth v. Bryant*, 936 F.3d 224 (5th Cir. 2019) ......................................... 2, 4, 9

*Tenney v. Brandhove*, 341 U.S. 367 (1951) .......................................................*passim*

*U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*,
    487 U.S. 72 (1988).......................................................................................... 4

*Yaw v. Del. River Basin Cmm'n*,
    49 F.4th 302 (3d Cir. 2022)........................................................................ x, 7

## CONSTITUTIONS, STATUTES, AND RULES

U.S. Const. Amend. 14 ..............................................................................*passim*

2016 Miss. Gen. Laws ch. 456, § 1 (SB2162), codified as
    Miss. Code Ann. § 61-3-6 (Rev. 2022)....................................................*passim*

Fed. R. App. P. 35 ......................................................................................... x

**STATEMENT OF THE ISSUES MERITING EN BANC CONSIDERATION**

1.    Whether members of a governmental Board of Commissioners have standing to challenge a state statute treating all Commissioners exactly alike on the basis that the Legislature was motivated by racial discrimination against the Commissioners serving at the time of the statute's adoption.

2.    Whether current and former Members of the Legislature may be compelled, notwithstanding legislative privilege, to prepare a privilege log of documents and communications related to a challenged statute because of the possibility, unsupported by any evidence, that the privilege might have been waived.

**STATEMENT OF THE COURSE OF PROCEEDINGS AND
DISPOSITION OF THE CASE**

In 2016, the Mississippi Legislature adopted SB2162, 2016 Miss. Gen. Laws ch. 456, § 1, codified as Miss. Code Ann. § 61-3-6 (Rev. 2022), reforming the management of the airport in Jackson, Mississippi. The agency, the Jackson Municipal Airport Authority ("JMAA"), received a new name, and its Board of Commissioners expanded from five to nine. The five existing Commissioners filed a complaint in the United States District Court for the Southern District of Mississippi, the Honorable Carlton Reeves presiding, to enjoin the appointment of new Commissioners. ROA.560-614. On July 11, 2016, an agreed order precluded SB2162 from taking effect pending further order of the Court. ROA.519-20.

Appellants are seven former and current Legislators who were served with subpoenae duces tecum, ROA.1324-39, 4728-43, by the Commissioners, who assert that the evidence sought relates to their "claim that Senate Bill 2162 violates the rights of equal protection under the law for all individual citizens in the City of Jackson." ROA. 1647.

The Legislators appeal an order entered on March 15, 2021, enforcing the subpoenae. ROA.4823, R.E.3. The appealed order reinstated an order entered on June 25, 2018, ROA.4823, RE.5, upholding an order issued on December 19, 2017, by the Magistrate Judge, requiring each Legislator to produce a log of documents for which privilege is claimed. ROA.1747-61, R.E.4. The District Court explained that "the Magistrate Judge w[ould] adjudicate whether the plaintiffs can overcome the traditional privilege afforded to legislators' communications with other legislators and legislative staff," adding that "the legislators will likely have to produce their communications with non-legislative third parties, where the privilege was waived." ROA.3609, R.E.5 at 2.

This Court held that JMAA could not enforce its subpoenae because it had not joined "the equal protection claim brought as Count VII." *Stallworth v. Bryant*, 936 F.3d 224, 229 (5th Cir. 2019). This Court did not address the subpoenae issued by the Commissioners, finding that they "lack standing." *Id.*, at 230. This Court remanded "with instruction to DISMISS . . . Count VII." *Id.*, at 232.

2

On remand, four Commissioners moved to amend Count VII attempting to cure the jurisdictional defects found by this Court and add two new plaintiffs, newly-appointed Commissioners Wright and Martin. ROA.4258-62. The District Court found that precedents do "not conclusively establish the amendment would be futile." ROA.4560, R.E.6 at 6.

Plaintiffs then moved to reinstate the order vacated by this Court. ROA.4719-21. The Legislators asserted legislative privilege and that the amendment had not repaired the jurisdictional defects. ROA.4778-81. They argued that plaintiffs lack standing for multiple reasons, particularly because the alleged injury is not particularized as to them but would be suffered by any Commissioner. ROA.4770-78. The District Court reinstated the prior order without addressing the jurisdictional arguments. ROA.4823, R.E.3.

The Legislators timely filed their notice of appeal on April 13, 2021. ROA.4824-26, R.E.2. After the last of the original plaintiff Commissioners resigned from the Board, the Legislators moved this Court on June 7, 2022, to dismiss their claims as moot.

On May 10, 2023, a panel of this Court affirmed in part and reversed in part. *Jackson Mun. Airport Auth. v. Harkins*, 67 F.4th 678 (5th Cir. 2023). Judge Elrod wrote that the remaining Commissioners had standing and that the privilege did not obviate the necessity for the Legislators to produce a privilege log, even though the

subpoenae only sought evidence of the Legislators' motive in passing SB2162. *Id.*, at 678-87. Judge Dennis joined these parts of Judge Elrod's opinion. *Id.*, at 688. Judge Duncan found that the Commissioners did not have standing to bring their claim. *Id.*, at 691-93. The next day the panel denied the motion to dismiss as moot. The Legislators now timely file their petition for hearing en banc.

## STATEMENT OF NECESSARY FACTS

No substantive evidence has been admitted, and no findings of fact have been made.

## ARGUMENT AND AUTHORITIES

The Legislators seek reversal for two reasons. First, the District Court lacks jurisdiction because the Commissioners lack standing to assert a constitutional claim of intentional racial discrimination.[1] Second, the compelled preparation of a privilege log violates legislative privilege, as held in *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015), and *In re North Dakota Legislative Assembly*, -- F.4th -- , 2023 WL 3831550 (8th Cir. June 6, 2023), an opinion issued after the panel decision.

---

[1] Although the Legislators are not parties to the action, "even nonparty witnesses refusing to comply with a discovery order may challenge standing." *Stallworth*, 936 F.3d at 230 (footnote omitted), citing *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76, (1988).

## I.    THE COMMISSIONERS LACK STANDING TO ASSERT A CLAIM OF INTENTIONAL RACIAL DISCRIMINATION.

The Commissioners do not claim to be acting in their official capacities, but instead purport to act "on behalf of themselves and all others similarly situated, to vindicate the right to equal protection of the citizens and taxpayers of the City of Jackson." ROA. 4602 n.36, R.E.7 at 39 n.36.  This Court earlier ruled that Jackson residents and taxpayers lack a claim under the Equal Protection Clause. *Stallworth*, 936 F.3d at 231 (footnote omitted).

The Commissioners' attempt to allege standing fails for two reasons.  First, under *Raines v. Byrd*, 521 U.S. 811 (1997), the alleged injury is institutional, not particularized as to them.  Second, even if they have attempted to assert a personal claim, the claim belongs to the Commissioners serving when SB2162 was passed, not to the subsequently-appointed Commissioners now acting as plaintiffs.

### A.    Any injury is institutional, not particularized as to the Commissioners.

The majority of the panel recognized that individual members of a public body lack standing to contest an institutional injury "based on a loss of political power." *JMAA*, 67 F.4th at 685, quoting *Raines*, 521 U.S. at 821.  The majority found the alleged injury to be sufficiently particularized because, "[u]nlike the plaintiffs in *Raines*, the Commissioners are alleging deprivation of something to which they are

5

personally entitled: their seats as Commissioners and the benefits that come with the position." 67 F.4th at 685.

The majority observed that "SB 2162 abolishes the Jackson Municipal Airport Authority and thus the Commissioners' positions." *Id.*[2] The majority noted that *Raines* recognizes that public officials may have a personal entitlement, "such as their seats as Members of Congress after their constituents elected *them*." *Id.*, quoting *Raines*, 521 U.S. at 821 (emphasis in *Raines*). *Raines,* however, used this language in distinguishing *Powell v. McCormack,* 395 U.S. 486 (1969). There, plaintiff lost his seat, but the House of Representatives was not abolished. *Raines* noted that Congressman Powell had been "singled out for specially unfavorable treatment as opposed to other Members." 521 U.S. at 821. In addition, officials lack standing when their claim is "based on loss of political power, not loss of any private right." *Id.*[3] Unlike *Powell*, SB 2162 does not single out any one Commissioner for unfavorable treatment but treats all Commissioners *exactly alike.*

The majority observed that the Legislators did not contest that the loss of

---

[2]    It elevates form over substance to say that SB2162 abolishes JMAA. The airport continues to exist, and it will be governed by an agency with a new name having nine Commissioners instead of five. Miss. Code Ann. § 61-3-6(2). The two remaining plaintiff Commissioners, Martin and Wright, have made no effort to show that their fellow plaintiffs, the Mayor and the City Council, will not retain them as Commissioners.

[3]    *Raines* explained, "If one of the Members were to retire tomorrow, he would no longer have a claim; the claim would be possessed by his successor instead." When Commissioner Pridgen died, she was replaced, not by her estate, but by her successor in office, because "[t]he claim of injury thus runs (in a sense) with the Member's seat." *Id.*

benefits was concrete enough for standing purposes. 67 F.4th at 685. The loss of benefits may be as concrete as Congressman Powell's loss of his salary, but that arguably concrete loss is not particularized because, as Judge Duncan pointed out in his dissent, the injury was cognizable "only because Congressman Powell had been 'singled out for specially unfavorable treatment as opposed to other Members.'" *Id.*, at 692, quoting *Raines*, 521 U.S. at 821. Had all Members of the House somehow been deprived of their benefits, as all Commissioners arguably might be here, there would have been no particularized injury as to any Member.

Under the supposed distinction from *Raines* recognized by the majority, a case or controversy under Article III will exist any time any agency at any level of government is abolished. Even without "tangible benefits," the majority suggested that officials may complain of a loss of "status and authority." 67 F.4th at 684. The Supreme Court, in allowing Congressman Powell to pursue his salary, did not intend to turn every reorganization of the administrative state into a federal case. Here, SB2162 simply replaced one board with a new one; that is an institutional injury which the Commissioners may not contest.

Judge Duncan's dissent observed that the misapplication of *Raines* by the majority creates conflicts with at least three Circuits. *Id.*, at 693 n.2, citing *Yaw v. Del. River Basin Cmm'n*, 49 F.4th 302, 311 (3d Cir. 2022); *Maloney v. Murphy*, 984 F.3d 50, 64 (D.C. Cir. 2020); *Kerr v. Hickenlooper*, 824 F.3d 1207, 1216 (10th Cir.

2016).  The recent grant of certiorari in *Maloney,* No. 22-425, 2023 WL 3440565 (U.S. May 15, 2023), is unlikely to ameliorate that conflict as the Solicitor General is seeking an even more restrictive application of the standing rules.  This Court should grant rehearing and align its *Raines* jurisprudence with that of the other Circuits.

**B.    Commissioners Wright and Martin lack standing to pursue the racial discrimination claim asserted by their predecessors in office.**

The Commissioners assert that ¶¶ 52, 124, 126, 137, and 140 can be read as alleging "that the Commissioners' injury stems from racial discrimination directed, at least in part, at them specifically."  Appellees' Brief at 20.[4]  Each of these numbered paragraphs in the amended complaint, with the exception of ¶140,[5] is identical to those paragraphs in the complaint filed by the original Commissioners.  Compare ROA.580, 600-01, 604-05 with ROA.4583, 4604-05, 4608-09, R.E.7 at 41-42, 45-46.  Those were the individuals against whom the alleged racial discrimination was directed.

Every Commissioner when SB2162 was passed has now left the Board.  No complaint has ever alleged that any racial discrimination was specifically directed

---

[4]    The Legislators accept this contention for purposes of this petition, even though it is wrong.  Plaintiffs explicitly claim to be asserting "the right to equal protection of the citizens and taxpayers of the City of Jackson."  ROA.4602 n.36, R.E.7 at 39 n.36.  They claim to share a general injury suffered by all citizens.

[5]    Paragraph 140 alleges that the plaintiff Commissioners will suffer injury but does not allege that racial discrimination was directed against anybody.

against the two new Commissioners, Wright and Martin. Nevertheless, they seek a remedy for themselves for an alleged constitutional violation suffered by others.

When the last of the original Commissioners left the Board, the Legislators moved in this Court to dismiss their claims as moot on June 7, 2022. Because standing is jurisdictional, the dismissal for mootness of all original plaintiffs would necessitate review of the supposed standing of the newly-joined Commissioners. *See, e.g.*, *Louisiana Acorn Fair Hous. v. LeBlanc,* 211 F.3d 298, 304 (5th Cir. 2000). On May 11, 2023, the day after the issuance of the opinion, the panel denied that motion as moot, but it did not say why. Apparently, the majority concluded that the new Commissioners had standing to pursue the claims of their predecessors, whether or not those predecessors remained in the case.

When this litigation was filed, Wright and Martin were presumably residents and taxpayers of Jackson, but this Court has already found that residents and taxpayers have no claim. *Stallworth*, 936 F.3d at 231. If they acquired the right to proceed when they joined the Board, there can be no dispute that they are asserting a right which "runs (in a sense) with the Member's seat." *Raines*, 521 U.S. at 821. The injury is therefore institutional, and they lack standing to pursue it.

II. **THE DECISION TO REQUIRE THE LEGISLATORS TO PREPARE A PRIVILEGE LOG CONFLICTS WITH *HUBBARD* AND *NORTH DAKOTA* AND IS IN TENSION WITH *LA UNION*.**

In *Hubbard*, the Eleventh Circuit reversed an order requiring legislators to compile a log of documents contended to be privileged where plaintiffs sought them only to find evidence of intentional racial discrimination. Here, the majority of the panel affirmed an order requiring preparation of a privilege log concerning the same type of evidence. Because the majority did not identify a distinction from *Hubbard*, there is a Circuit conflict.

Just last week, the Eighth Circuit blocked the ordered preparation of a privilege log. The Court quashed subpoenae for documents, *North Dakota,* at *3, and the dissent revealed that "the district court instructed the legislative petitioners to produce a privilege log." *Id.*, at *4 (Kelly J., concurring in part and dissenting in part). Because the majority here required production of a log, its decision also conflicts with *North Dakota*.

This Court, in its decision last month in *La Union del Pueblo Entero v. Abbott*, -- F.4th --, 2023 WL 3494770 (5th Cir. May 17, 2023), did not address whether the District Court could require legislators to submit a privilege log because they did not seek relief until after they had submitted the log and had been denied the protection of the privilege. However, the Court explained the broad basis of the privilege. "It also serves the 'public good' by allowing lawmakers to focus on their jobs rather

than on motions practice in lawsuits." *La Union*, at *5, quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). Here, by contrast, the majority remanded the question of the application of the privilege for further motion practice following the preparation of a log.

*Hubbard, North Dakota,* and *La Union* all recognize, as did *Tenney*, the importance of protecting legislators from the distraction of litigation. Here, that purpose can be achieved only by reversing the appealed order. Indeed, the points on which the panel decision, *Hubbard, North Dakota,* and *La Union* all agree lead inexorably to the conclusion that the Legislators should not be burdened with the production of a log.

First, as the majority recognized, "Legislative privilege applies to communications where the legislator or his agent was acting within 'the sphere of legislative activity.'" 67 F.4th at 687, quoting *Tenney*, 347 U.S. at 376. This Court in *La Union* agreed that the scope of the privilege encompasses "actions that occurred within 'the sphere of legitimate legislative activity.'" *La Union*, at *4, quoting *Tenney*, 341 U.S. at 376. *Hubbard* declared, "The privilege protects the legislative process itself, and therefore covers ... legislators' actions in the proposal, formulation, and passage of legislation." 803 F.3d at 1308, citing *Tenney*, 347 U.S. at 372, 376. Accord, *North Dakota,* at *1. Indeed, the Commissioners have never

denied that the requested documents come within the scope of privilege; that is why they asked this Court to find an exception.

Likewise, the privilege recognizes no exception simply because legislative motivation is at issue.[6] *Hubbard* said, "The privilege applies with full force against requests for information about the motives for legislative votes and legislative enactments." 803 F.3d at 1310. Rejecting a claim that evidence of alleged intentional racial discrimination should be discoverable, this Court in *La Union* declared:

> "[I]t [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators," and courts are not to facilitate an expedition seeking to uncover a legislator's subjective intent in drafting, supporting, or opposing proposed or enacted legislation.

*La Union,* *5, quoting *Tenney*, 341 U.S. at 377. The majority here ruled only that "evidence of legislative motive is not *necessarily* privileged." 67 F.4th at 686-87 (emphasis added). The majority clearly indicated that such evidence would be privileged in the absence of one of two potential exceptions.

First, it is certainly true that "statements that have no connection whatsoever with 'legitimate legislative activity' are not protected by legislative privilege." *Id.*, at 687, citing *Hubbard*, 803 F.3d at 1308, quoting *Tenney*, 341 U.S. at 376. However, the Commissioners requested no such documents; the subpoenae "sought

---

[6]    Plaintiffs in *North Dakota,* at *3, did not assert a claim based on impermissible intent.

documents and communications related to SB 2162." 67 F.4th at 682. "[D]ocuments and communications related to SB 2162" are necessarily related to "legitimate legislative activity."

Second, the majority declared that "legislative privilege as to certain documents is waived when the legislator *publicly* reveals those documents." *Id.,* at 687 (emphasis in original), citing *Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012). *Favors* recognized the likelihood that the legislators had waived privilege "when it released to the public" a memorandum from a lawyer. 285 F.R.D. at 196, 212. However, *Favors* rejected the waiver argument regarding "consultants who aid legislators in the performance of their legislative duties," *id.,* at 213, agreeing with the majority here that "some communications with third parties, such as private communications with advocacy groups, are protected by legislative privilege." 67 F.4th at 687.[7] *La Union* distinguished private "correspondence that they solicited from constituents, or … advice that they solicited from" state officers from publicly shared documents. "The very fact that Plaintiffs need discovery to access these documents shows that they have not been shared publicly." *La Union,* at *4. Because communications with non-legislators are protected by the privilege, and

---

[7]    *North Dakota,* at *2, relied on the panel decision in denying that "the legislative privilege affords no protection against discovery of communications between a legislator and third parties."

because there is no contention or evidence that any Legislator has publicly disseminated any documents, that supposed exception cannot support the need for a privilege log here.[8]

The problem, then, is not with the principles identified by the panel, but with their application here. If any Legislator has issued a public press release, made a public address, or mailed a newsletter to constituents about SB2162, the Commissioners can have that. None of that is what the Commissioners want. They want the Legislators' private communications about SB2162 in their files, their computers, and their telephones. However, this Court has held that "where the documents have been shared with some third party – but haven't been shared publicly – the waiver argument fails." *La Union,* at *4.

The privilege protects not only the privacy of legislators' communications but the value of their time. The privilege "allow[s] lawmakers to focus on their jobs rather than on motions practice and lawsuits." *Id.,* at *5. *Tenney* recognized that legislators should not be "be subjected to the cost and inconvenience and distractions of a trial." 341 U.S. at 377. *Hubbard* refused to require preparation of a log because "[o]ne of the privilege's principle [*sic*] purposes is to ensure that lawmakers are

---

[8]    Any plaintiff in a case like this has other discovery methods by which documents publicly revealed may be obtained from individuals other than the legislators themselves. See *In re Bryant,* 745 Fed. Appx. 215, 221 (5th Cir. 2018) (requiring investigation through "alternate witnesses" before pursuing Governor's staff for discovery).

allowed to 'focus on their public duties.'"  803 F.3d at 1310, quoting *E.E.O.C. v. Washington Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011).  Most recently, the Eighth Circuit has said, "Legislative privilege ... reinforces representative democracy by fostering an environment where public servants can conduct their duties without ... the distraction of incessant litigation." *North Dakota,* at *1.

When the privilege originated in England before our Revolution, a trial meant showing up one day in court with your evidence.  Today it means months and years of locating and managing paper and electronic documents.  The burden imposed by the majority in this case is potentially far greater than the burden identified in *Tenney*.  *Tenney* said that such "cost and inconvenience" should not be required "upon a conclusion of the pleader," 341 U.S. at 377, but today any pleader can accuse any legislative body of intentional discrimination.  Several such pleadings currently challenge recent acts of the Mississippi Legislature:

- *Mississippi State Conference of the NAACP v. State Board of Election Commissioners, et al.*, No. 3:22-cv-00734-DPJ-HSO-LHS (S. D. Miss.);

- *NAACP v. Tate Reeves, et al.*, No. 3:23-cv-00272-HTW-LGI (S.D. Miss.).

In addition, a complaint alleging intentional discrimination in the adoption of Congressional districts was dismissed without prejudice.  *Smith v. Hosemann*, 2022 WL 2168960 (S.D. Miss. May 23, 2022), *appeal dismissed*, 143 S.Ct. 770 (2023).

Presumably it will soon be refiled.[9] The preparation of privilege logs in all those cases will leave part-time legislators with little time to do anything else.

The Legislators are not the only persons who may suffer. Even though the majority recognized that communications with non-legislators are privileged, a log would require the revelation of the names of all parties to each communication.[10] The Ninth Circuit identified the danger of disclosing the names of those providing information to Members of Congress.[11] "If a source's identity is disclosed, he could suffer serious adverse consequences. In the case of organized crime, for example, disclosure could even be life-threatening." *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983). Moreover, the legislators who prepare the logs may have no way of knowing what dangers their informants may face. Under those circumstances, "The possibility of public exposure could constrain these sources." *Id.*

Finally, *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615 (5th Cir. 2017), on which the District Court relied, ROA.3609, R.E.5 at 2,

---

[9]    In a fourth case, challenging election districts for the Mississippi Supreme Court, allegations of intentional racial discrimination were recently withdrawn. *Dyamone White v. State Board of Election Commissioners, et al.*, No. 4:22-cv-00062-SA-JMV (N.D. Miss.)

[10]    Local Uniform Civil Rule 26(e) requires a log to identify all authors and recipients. ROA.1760, R.E.4 at 14.

[11]    *La Union,* at *5, concluded that "the legislative privilege's scope is similar for state and federal lawmakers."

cannot support its order. *La Union* held that *Jefferson* did not establish a rule of evidence, but "held only that a claim for injunctive relief could proceed." *La Union*, at \*7. "That holding says nothing about cases like this one." *Id.*

This Court in *La Union* was not required to determine whether a privilege log should have been ordered in the first place, but the Eighth and Eleventh Circuits have properly held that the imposition of such a burden violates legislative privilege. The decision of the majority here to require a log, then, conflicts with *Hubbard* and *North Dakota*. This Court should rehear the appeal en banc to eliminate that conflict.

## CONCLUSION

The Legislators request a hearing en banc to secure the reversal of the District Court's order.

Respectfully submitted,

JOSH HARKINS, DEAN KIRBY, PHILLIP MORAN, CHRIS CAUGHMAN, NICKEY BROWNING, JOHN A. POLK, MARK BAKER, and ALEX MONSOUR

By:  *s/Michael B. Wallace*
MICHAEL B. WALLACE, ESQ., MSB # 6904
CHARLES E. COWAN, ESQ., MSB # 104478
WISE CARTER CHILD & CARAWAY, P.A.
401 East Capitol Street, Suite 600
Jackson, MS  39205
Post Office Box 651
Jackson, MS  39201
Phone: 601-968-5500

Fax: 601-944-7738
mbw@wisecarter.com
cec@wisecarter.com

JOSH HARKINS; DEAN KIRBY; PHILIP
MORAN; CHRIS CAUGHMAN; NICKEY
BROWNING; JOHN A. POLK; MARK BAKER;
ALEX MONSOUR,

Respondents – Appellants

# CERTIFICATE OF SERVICE

The undersigned counsel of record certifies that a true and correct copy of the above and foregoing document has been served this day via ECF upon the following counsel of record for the Intervenors – Appellees:

Fred L. Banks, Jr.    banksf@phelps.com
LaToya C. Merritt    merrittl@phelps.com
Nicholas F. Morisani    nicholas.morisani@phelps.com
John L. Walker, Jr.    jwalker@walkergrouppc.com
Kevin B. Bass    kbass@walkergrouppc.com
Tylvester O. Goss    tgoss@dgwlaw.com
Monica D. Joiner    mjoiner@city.jackson.ms.us
Gail W. Lowery    glowery@city.jackson.ms.us
Kristen N. Blanchard    kblanchard@city.jackson.ms.us
Kimberly C. Banks    kimcelestejax@aol.com
Everett T. Sanders    esanders@sanlaw.net
Aisha A. Sanders    asanders@sanlaw.net
Justin L. Matheny    jmath@ago.state.ms.us
Krissy Casey Nobile    knobi@ago.state.ms.us
Whitney Holliday Lipscomb    whitney.lipscomb@governor.ms.gov
P. Ryan Beckett    ryan.beckett@butlersnow.com
Charles E. Griffin    charles.griffin@butlersnow.com
Phillip B. Abernethy    phil.abernethy@butlersnow.com
Katherine Bryant Snell    katie@katiebryantsnell.com
Craig Lawson Slay    cslay@rankincounty.org
Leland Kyle Williams    kwilliams@brunini.com
William Trey E. Jones, III    tjones@brunini.com

This the 14th day of June, 2023.

s/*Michael B. Wallace*
Michael B. Wallace,
Attorney for Respondents –Appellants

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.     This document complies with the type-volume limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2, this document contains 3893 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, Version 2013, in 14-point Times New Roman font, except for footnotes which are in 12-point Times New Roman font.

This, the 14th day of June, 2023.

s/*Michael B. Wallace*

Attorney for Respondents – Appellants

**APPENDIX**

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 10, 2023

Lyle W. Cayce
Clerk

No. 21-60312

JACKSON MUNICIPAL AIRPORT AUTHORITY; BOARD OF
COMMISSIONERS OF THE JACKSON MUNICIPAL AIRPORT
AUTHORITY, *each in his or her official capacity as a Commissioner on the
Board of Commissioners of the Jackson Municipal Airport Authority*; DOCTOR
ROSIE L. T. PRIDGEN, *in her official capacity as a Commissioner on the
Board of Commissioners of the Jackson Municipal Airport Authority*;
REVEREND JAMES L. HENLEY, JR., *in his official capacity as a
Commissioner on the Board of Commissioners of the Jackson Municipal Airport
Authority*; LAWANDA D. HARRIS, *in her official capacity as a
Commissioner on the Board of Commissioners of the Jackson Municipal Airport
Authority*; VERNON W. HARTLEY, SR., *in his official capacity as a
Commissioner on the Board of Commissioners of the Jackson Municipal Airport
Authority*; EVELYN O. REED, *in her official capacity as a Commissioner on
the Board of Commissioners of the Jackson Municipal Airport Authority*;
DOCTOR ROSIE L. T. PRIDGEN, *individually as citizens of the City of
Jackson, Mississippi, on behalf of themselves and all others similarly situated*;
LAWANDA D. HARRIS, *individually as citizens of the City of Jackson,
Mississippi, on behalf of themselves and all others similarly situated*; VERNON
W. HARTLEY, SR., *individually as citizens of the City of Jackson,
Mississippi, on behalf of themselves and all others similarly situated*; EVELYN
O. REED, *individually as citizens of the City of Jackson, Mississippi, on behalf
of themselves and all others similarly situated*; JAMES L. HENLEY, JR.,
*individually as citizens of the City of Jackson, Mississippi, on behalf of
themselves and all others similarly situated*,

*Intervenors—Appellees,*

*versus*

No. 21-60312

Josh Harkins; Dean Kirby; Phillip Moran; Chris
Caughman; Nickey Browning; John A. Polk; Mark Baker;
Alex Monsour,

*Respondents—Appellants.*

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-246

---

Before Dennis, Elrod, and Duncan, *Circuit Judges.*

Jennifer Walker Elrod, *Circuit Judge:*[*]

A group of Mississippi legislators appeals a district court order
instructing them to produce: (1) a privilege log; and (2) communications and
documents that have been shared with third parties. We hold that the district
court did not abuse its discretion in ordering the Legislators to produce a
privilege log. But the district court erred in broadly holding that legislative
privilege was automatically waived for any documents that have been shared
with third parties. Accordingly, we AFFIRM in part, REVERSE in part,
and REMAND for further proceedings.

I

The Jackson-Medgar Wiley Evers International Airport is a major
airport located in Jackson, Mississippi. Since 1960, the airport has been
operated by the Jackson Municipal Airport Authority, whose five
commissioners are selected by the city government. But in 2016, the
Mississippi legislature passed, and the governor signed into law, SB 2162. *Id.*
§ 61-3-6. SB 2162 abolishes the Jackson Municipal Airport Authority and

---

[*] Judge Dennis joins Part IV and Section V.A of this opinion. Judge Duncan joins
Part III and Section V.B of this opinion.

No. 21-60312

replaces it with a regional authority composed of nine commissioners, only two of whom are selected by Jackson city government. *Id.*

Shortly before the Governor signed SB 2162 into law, a Jackson citizen filed a suit seeking to enjoin the law. The mayor, the city council, the Jackson Municipal Airport Authority, its board of commissioners, and the commissioners in their individual capacities intervened in that lawsuit. The intervenors contend that SB 2162 violates the Equal Protection rights of the citizens of Jackson by eliminating the locally controlled Jackson Municipal Airport Authority for racially discriminatory reasons.

During discovery, the intervenors served subpoenas on eight non-party state legislators who participated in SB 2162's drafting and passage. The Legislators refused to comply with Request #3 in the subpoena, which sought documents and communications related to SB 2162, asserting that any responsive discovery would either be irrelevant or protected by legislative privilege. The magistrate judge, and later the district court, rejected this position. The order noted that because legislative privilege is qualified, the Legislators must produce a privilege log before any assertions can be assessed. It also held that the "privilege has been waived for documents that have been shared with third parties," and that "the Legislators *must produce the nonprivileged documents* responsive to Request #3." The Legislators appealed and a panel of this court vacated the district court's order. *Stallworth v. Bryant*, 936 F.3d 224 (5th Cir. 2019). But the panel did not reach the merits because it held that the Commissioners lacked standing. *Id.* at 229–32.

On remand, the district court allowed the plaintiffs to amend their complaint to cure the standing defect and add two newly appointed commissioners as plaintiffs. The Commissioners again served subpoenas on the Legislators seeking the exact same information as the prior subpoenas.

No. 21-60312

The Legislators again objected on the basis of legislative privilege; the district court again ordered the Legislators to comply with the subpoena; and the Legislators again declined and appealed.

This appeal raises four issues: (1) whether this court has appellate jurisdiction; (2) whether the Commissioners have standing; (3) whether legislative privilege relieves the Legislators from having to submit a privilege log; and (4) whether the district court erred in holding that legislative privilege was waived for any documents that have been shared with third parties.

## II

We review questions of subject-matter jurisdiction *de novo*. *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 400 (5th Cir. 2014). A subpoena enforcement order is generally reviewed for abuse of discretion. *United States v. Zadeh*, 820 F.3d 746, 750 (5th Cir. 2016). But we review a district court's determination of controlling law *de novo*. *In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003).

## III

Generally, appellate jurisdiction is statutorily confined to review of "final decisions." 28 U.S.C. § 1291. But "the Supreme Court 'has long given' § 1291a 'practical rather than a technical construction.'" *Leonard v. Martin*, 38 F.4th 481, 486 (5th Cir. 2022) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). Accordingly, section 1291 encompasses not only the final decisions that terminate an action, "but also a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final." *Id.* (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)) (internal quotation marks omitted).

No. 21-60312

Under this court's precedent, the Legislators have the right to immediately appeal the district court's order. Our decisions in *Cates* and *Branch* are instructive. *Cates v. LTV Aerospace Corp.*, 480 F.2d 620, 622 (5th Cir. 1973); *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 879 (5th Cir. 1981). In *Cates*, we considered whether a subpoena upon a government representative can be used to obtain documents that are not in the custody of that representative. Before addressing the merits, we first considered whether appellate jurisdiction existed. We held that it did because "discovery orders may be appealable" when governmental privilege is involved and the government "is not a party to the lawsuit." *Cates*, 480 F.2d at 622.

While our decision in *Cates* only considered an instance where the subpoenaed entity was not in custody of the relevant documents, our subsequent opinion in *Branch* observed that "*Cates* clearly extends the right of immediate appeal to the government even when it is itself in custody of the subpoenaed material." 638 F.2d at 879. Likewise, relying on this court's holding in *Cates* and *Branch*, the Eleventh Circuit has held that "one who unsuccessfully asserts a governmental privilege may immediately appeal a discovery order where he is not a party to the lawsuit." *In re Hubbard*, 803 F.3d 1298, 1305 (11th Cir. 2015). Thus, in accordance with our precedent and the Eleventh Circuit's decision in *Hubbard*, we hold that appellate jurisdiction exists in this case. *Id.*; *Cates*, 480 F.2d at 622; *Branch*, 638 F.2d at 879; *see also Leonard*, 38 F.4th at 487 (observing that the Fifth Circuit "allows immediate appeal of orders" that "implicate[] 'some particular value of a high order' or 'substantial public interest' that would be imperiled or destroyed if review were delayed until after entry of an archetypal final judgment." (quoting *Mohawk*, 558 U.S. at 107)).

The Commissioners argue that we lack appellate jurisdiction here because "[n]othing about the district court's order forces 'disclosure' of any

No. 21-60312

documents." The Commissioners assert that the order "merely requires the Legislators to provide a privilege log." Citing our decision in *Banca Pueyo*, the Commissioners argue that we lack appellate jurisdiction here because the order is merely a preliminary step in the resolution of this discovery dispute. *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 978 F.3d 968 (5th Cir. 2020).

But the order here is not merely a preliminary step because it specifically ordered the Legislators to produce any documents that had been shared with third parties. Contrary to Judge Dennis's partial dissent, the magistrate judge's finding is not just a "summary of the state of the law regarding legislative privilege." *Post*, at 15. The order stated:

> The Court finds that to the extent documents or information otherwise protected by the legislative privilege have been shared with third parties, the privilege has been waived. Accordingly, *the Legislators must produce those documents.*

Order Granting in Part and Denying in Part Motion to Enforce Subpoenas at 13, *Jackson Mun. Airport Auth. v. Reeves*, No. 16-CV-246 (S.D. Miss. Dec. 19, 2017) (emphasis added).

The magistrate judge held that documents or information that "have been shared with third parties" are non-privileged and that "the Legislators must produce the nonprivileged documents." Because the Legislators were ordered to produce all non-privileged documents, it necessarily follows that the Legislators were ordered to produce documents that had been shared with third parties. That is unquestionably a final discovery order because the Legislators could no longer assert any privilege as to those documents.

And so, *Banca Pueyo* is distinguishable. In *Banca Pueyo*, we held that there was no appellate jurisdiction because the appealed order did "not conclusively determine whether, and to what extent, discovery might be

No. 21-60312

required." 978 F.3d at 973. Here, the order did so. Accordingly, unlike the order in *Banca Pueyo*, the order here constitutes a final discovery order that is appealable under our precedent. *See Branch*, 638 F.2d at 879; *Cates*, 480 F.2d at 622.

## IV

Next, we consider standing. The Commissioners have standing in this case based on the amended complaint that was filed after remand. To have standing, the plaintiffs must have suffered an invasion of a legally protected interest that is: (1) "concrete, particularized, and actual or imminent"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Stallworth*, 936 F.3d at 229–30 (citation omitted). The Commissioners fulfill these conditions.

### A

#### 1

The alleged injury is concrete because the Commissioners will be deprived of their benefits if they lose their position. As Commissioners, they are entitled to receive a *per diem* for their service and a travel reimbursement that allows them to obtain specialized training in airport administration. In addition to these tangible benefits, their positions also confer substantial status and authority because as commissioners, they exercise considerable power over the airport by overseeing finances and operations and defining the airport's strategic goals. We hold that the potential loss of benefits that comes with the Commissioners' position is sufficiently concrete to support the Commissioners' standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("Concrete is not, however, necessarily synonymous with tangible." (quotation marks omitted)); *see also Stallworth*, 936 F.3d at 232 (Higginbotham, J., concurring) (noting that the Commissioner's "position

No. 21-60312

of status and authority may be a sufficient injury for their standing").[1] The Legislators did not meaningfully challenge the concreteness of the alleged injury.

2

The alleged injury is also sufficiently particularized because the Commissioners would suffer a personal injury from losing their seats. They are the only people who would lose the position as commissioners and the benefits that come with the position if SB 2162 is allowed to become effective. *Cf. Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir. 2017) (holding that an injury was not particularized where plaintiffs' harm was same as harm to "millions of people").

The Legislators argue that because SB 2162 abolishes the entirety of Jackson Municipal Airport Authority (not just the Commissioners' seats), the harm is not particularized to the Commissioners. Citing *Raines v. Byrd*, 521 U.S. 811 (1997), the Legislators contend that the alleged injury is "the sort of institutional injury which the Supreme Court has held insufficient to establish standing for Members of Congress." But *Raines* hardly supports the Legislators' position here.

In *Raines*, the Supreme Court considered whether Members of Congress have standing to seek a declaration of the unconstitutionality of an act passed over their negative votes. The Court held that the Congressmen

---

[1] A panel of this court in *Stallworth* held that the plaintiffs had no standing because "The complaint never suggests—as counsel did during oral argument—that the individual commissioners are volunteers reimbursed for some expenses, that Mississippi law recognizes volunteers as public employees in some contexts, and that the combination might give them standing to challenge SB 2162." *Stallworth v. Bryant*, 936 F.3d 224, 232 (5th Cir. 2019). The plaintiffs have since amended their complaint and cured that defect on remand.

No. 21-60312

did not have standing because their claim was "based on a loss of political power, not loss of something to which they are personally entitled." *Id.* at 821. The Court observed that the alleged harm there was not sufficiently particularized because "appellees do not claim that they have been deprived of something to which they *personally* are entitled—such as their seats as Members of Congress after their constituents had elected *them.*" *Raines*, 521 U.S. at 821. Unlike the plaintiffs in *Raines*, the Commissioners are alleging deprivation of something to which they are personally entitled: their seats as Commissioners and the benefits that come with the position. Accordingly, we hold that the alleged injury is sufficiently particularized to support the Commissioners' standing.

3

Further, the alleged injury is imminent because SB 2162 abolishes the Jackson Municipal Airport Authority and thus the Commissioners' positions. On this issue, the Legislators argue that the injury is not imminent because SB 2162 will not immediately abolish the Jackson Municipal Airport Authority. They note that the Authority will continue to exist until the Federal Aviation Administration approves the new Jackson Metropolitan Area Airport Authority.

In response, the Commissioners argue that "the time delay that [the Legislators] claim is fatal to the Commissioners' standing is almost entirely caused by the fact that this lawsuit is pending: the only reason the FAA has not considered the transfer yet is because FAA declines to do so while there is active litigation concerning a contested transfer of airport control." *See* FAA's "Notice of Policy on Evaluating Disputed Changes of Sponsorship at Federally Obligated Airports," 81 Fed. Reg. 36144, 36145 (Jun. 6, 2016). The Legislators never denied that assertion. Nor did they provide any reason to suggest that the FAA may decide not to approve the new authority. Rather,

No. 21-60312

the Legislators merely assert that "[e]ven if the dismissal of the complaint will ultimately lead to approval by the FAA of the new Authority, the process may take a very long time."

But the fact that the approval process might take a very long time is insufficient to defeat the Commissioners' standing because the alleged injury here is still likely to occur and is "certainly impending." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Thus, we hold that the Commissioners satisfy the imminence requirement.

## B

Finally, we address traceability and redressability. The alleged injury is traceable to SB 2162 because the law, by its very own terms, eliminates the Commissioners' positions. As to redressability, the Commissioners here are seeking an injunction against SB 2162 and a declaration that SB 2162 is unconstitutional. The Legislators argue this will not redress any harm because the Commissioners could lose their positions for some other reason. But the redressability prong does not require a remedy that covers every conceivable injury, just one that redresses the harm caused by SB 2162. Enjoining the enforcement of SB 2162 would prevent the law from abolishing the Jackson Municipal Airport Authority, and thus the Commissioners' positions. Consequently, the alleged injury is redressable by the relief sought.

Accordingly, based on the operative complaint, the Commissioners have standing in this case.

## V

Having considered jurisdiction and standing, we now proceed to the merits. The district court ordered the Legislators to produce: (1) a privilege log; and (2) communications and documents that have been shared with third

No. 21-60312

parties. On appeal, the Legislators argue that this court should reverse both aspects of the order. We address each aspect in turn.

## A

First, the Legislators contend that no privilege log should be required because the Commissioners seek only evidence of motive, and any evidence of motive is privileged. And because the Equal Protection claim is based entirely on motive, the Legislators assert that any non-motive evidence would be irrelevant. Put simply, the Legislators argue that all the requested communications would either be privileged or irrelevant. Thus, they conclude that they need not produce a privilege log.

But a privilege log would not be useless because evidence of legislative motive is not necessarily privileged. As the Legislators themselves recognized, legislative privilege can be waived when certain conditions apply. For example, legislative privilege as to certain documents is waived when the Legislator *publicly* reveal those documents. *Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y. 2012) ("[A] legislator waives his or her legislative privilege when the legislator publicly reveals documents related to internal deliberations."). Likewise, statements that have no connection whatsoever with "legitimate legislative activity" are not protected by legislative privilege. *Hubbard*, 803 F.3d at 1308 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)); *see Tenney*, 341 U.S. at 377 ("Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good."). Accordingly, we agree with the district court that a privilege log is necessary to determine which of the requested documents and communications are protected by legislative privilege.

## B

Although the district court did not abuse its discretion in ordering the Legislators to produce a privilege log, the district court's determination that

11

No. 21-60312

legislative privilege had been waived for any "documents or information [that] have been shared with third parties" is overbroad. Legislative privilege applies to communications where the legislator or his agent was acting within "the sphere of legislative activity." *Id.* And the privilege is "not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process." *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007).

As relevant here, communications with third parties outside the legislature might still be within the sphere of "legitimate legislative activity" if the communication bears on potential legislation. *Hubbard*, 803 F.3d at 1308. Consequently, some communications with third parties, such as private communications with advocacy groups, are protected by legislative privilege when they are "a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider." *Almonte*, 478 F.3d at 107 (quoting *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980)). Thus, we disagree with the district court's broad pronouncement that the Legislators waived their legislative privilege for any documents or information that had been shared with third parties.[2]

\*     \*     \*

Accordingly, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

---

[2] Finally, contrary to Judge Dennis's partial dissent, our holding on this issue is not an "advisory opinion." *Post*, at 14. The appellant squarely presented the issue before this court. And as explained in Part III, the magistrate judge made a final determination as to this issue, so we have appellate jurisdiction to consider it.

No. 21-60312

JAMES L. DENNIS, *Circuit Judge*, concurring in part and dissenting in part:

I respectfully disagree with my colleagues that the district court ordered anything more than the production of a privilege log in this interlocutory appeal. Neither party has ever argued that the district court ordered the Legislators to produce any withheld discovery, and the order itself—contrary to the majority's selective quotation—is clear: if the Legislators choose to withhold any responsive discovery on the basis of legislative privilege, they must sustain their assertion of privilege with a privilege log which the Commissioners may then challenge. The court will resolve any dispute, only then ordering production if appropriate. This, of course, is how assertions of privilege work in discovery practice. *See* FED. R. CIV. P. 45(e)(2).[1] The Legislators' challenge to the first step of this process, before any assertion of privilege over specific discovery has been sustained, disputed, or adjudicated, is a challenge to an undetermined and inconclusive discovery dispute. It is unripe for appellate review.

Because the district court only ordered the Legislators to produce "the customary privilege log"—nothing more—I disagree that there is appellate jurisdiction for their interlocutory appeal. However, as a majority of the court finds we have the power to entertain this appeal, I agree with JUDGE ELROD that the Commissioners have standing to assert their Equal Protection claim. Losing a job, and its social and material benefits, is not an

---

[1] The district court ordered the Legislators to submit a privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5)(A). Rule 45(e)(2), formerly Rule 45(d), governs assertions of privilege over subpoenaed information, but the text of the two rules, as well as their obligations, are identical. *See* FED. R. CIV. P. 45 advisory committee's notes to 1991 amendment subsection d and notes to 2007 amendment; *Mosely v. City of Chicago*, 252 F.R.D. 421, 426 (N.D. Ill. 2008) ("Just as Rule 26(b)(5) requires parties lodging a claim of privilege against a discovery request to compile a privilege log, Rule 45(d)(2)(A)(ii) imposes the same obligation on nonparties responding to subpoenas.").

No. 21-60312

"institutional injury" simply because one happens to work for a public institution. I also agree that the Legislators' argument that legislative privilege is so absolute as to exempt them from all discovery process, even the basic responsibility of sustaining their assertion of privilege as the Federal Rules require, fails.[2] However, because I do not understand the district court to have ordered the production of any discovery, I view the majority's attempt to reverse the magistrate judge's statements of law as an advisory opinion which I cannot join.

In sum, I respectfully dissent from Section III of JUDGE ELROD's opinion above, concur with Section IV and Section V.A, and dissent from the advisory opinion of Section V.B.

\*    \*    \*

As my disagreement with the majority turns entirely on the nature of the order appealed, a detailed recounting of both the magistrate judge's order and the district court order overruling the Legislators' objections to the magistrate judge's order is necessary.

According to the majority, the magistrate judge's order held that legislative privilege had been waived for documents that "have been shared with third parties," and that "the Legislators must produce the nonprivileged documents." Maj. Op. at 7. Read in the context of the entire order, neither of these quotes means what the majority thinks they do.

---

[2] The Legislators' notion that they need merely invoke legislative privilege to be entitled to it is unknown to federal discovery practice and obviously unworkable. "The person claiming a privilege or protection cannot decide the limits of that party's own entitlement." FED. R. CIV. P. 45, advisory committee's note to 1991 amendment subsection d.

No. 21-60312

Starting with the second one first, the magistrate judge's directive to produce nonprivileged documents is, by its very terms, not an order to produce privileged documents for which the privilege has been waived. Rather, it is an order to produce *nonprivileged* documents.[3] At the time the Commissioners filed their motion to compel, the Legislators had not turned over any discovery in response to Request #3, including discovery over which they asserted no privilege. If the distinction between privileged and nonprivileged documents were not obvious from the plain meaning of the words, it is obvious from the remainder of the sentence in the order, which the majority omits. The omitted portion of the order states that the Legislators "must produce a privilege log identifying the responsive documents withheld from production under a claim of privilege." The distinction is clear: Nonprivileged documents must be produced, and for privileged documents, a privilege log must be produced. Nothing orders the production of privileged documents for which privilege has been waived.

The other supposed holding of the magistrate judge's that the majority relies on for jurisdiction—that legislative privilege has been waived for documents shared with third parties—is also a misreading of the magistrate judge's order. The complete sentence from which the majority selects its quote reads: "The Court finds that to the extent otherwise-privileged documents or information have been shared with third parties, the privilege with regard to those specific documents or information has been waived." This "finding," which the majority treats as a holding, is the

---

[3] The majority tries to evade this distinction by mischaracterizing the record, saying that "[t]he magistrate judge held that documents or information that 'have been shared with third parties' are non-privileged," Maj. Op. at 7, when in fact the order stated "to the extent documents or information otherwise protected by the legislative privilege have been shared with third parties, the privilege has been *waived*," Maj. Op. at 6 (quoting the magistrate judge's order) (emphasis added).

No. 21-60312

magistrate judge's summary of the state of the law regarding legislative privilege, not an application of that law to the specific discovery withheld. Immediately prior to the sentence cited by the majority, the order states that the Legislators "urge the Court to find" that, under the applicable caselaw, legislative privilege applies broadly to all communications with third parties, thus obviating the need to produce a privilege log. But after reviewing the caselaw, the magistrate judge "found" the law to be different than the Legislators' account of it, notably that legislative privilege could be waived with respect to documents shared with certain third parties. The language the majority quotes is the magistrate judge's summary of the applicable law, not an application of that law to any specific discovery withheld. Read in context, the language excerpted by the majority is simply the magistrate judge's response to the Legislators' argument that all communications, even those with third parties, are shielded by legislative privilege. This was the basis upon which the magistrate judge rejected the Legislators' position that they need not provide a privilege log. That the magistrate judge qualified his statement about the applicability of the law—noting that "to the extent otherwise-privileged documents or information have been shared with third parties," privilege would be waived—only demonstrates further that he had not, in fact, made any determination as to what specific discovery must be produced.

Perhaps that is why nothing in the order's decree actually directs the Legislators to produce any documents they have withheld on the basis of legislative privilege. The decretal portion of the order reads only: "By February 28, 2018, the Legislators must produce the nonprivileged documents responsive to Request #3 and must produce a privilege log identifying the responsive documents withheld from production under a claim of privilege." Notably absent from this is the directive that the majority

No. 21-60312

says is there: produce otherwise privileged documents that have been shared with third parties.

If there were any ambiguity, the district court's order overruling the Legislators' objections to the magistrate judge's order makes clear that the only thing the magistrate judge ordered the Legislators to produce was a privilege log. As the district court stated:

> The Magistrate Judge concluded that the state legislators subpoenaed in this action must create the customary privilege log. Once the privilege log is created and reviewed by all, the Magistrate Judge will adjudicate whether the plaintiffs can overcome the traditional privilege afforded to legislators' communications with other legislators and legislative staff. He then indicated that the legislators will likely have to produce their communications with nonlegislative third parties, where the privilege was waived.

I read the magistrate judge's order as the district court did. It directs the Legislators to produce a privilege log, and only after that will the application of legislative privilege to any withheld discovery be adjudicated.[4] Implicit in

---

[4] Indeed, the magistrate judge himself laid out these standard steps of asserting and adjudicating claims of privilege in his order, stating further that the parties and the court would follow them:

> Considering the claims in this case, the specific request, and the privilege at issue, the Court finds that Fed. R. Civ. P. 26 and L.U.Civ.R. 26 require a privilege log. Accordingly, should the Legislators withhold any documents responsive to Request #3, they must also produce a privilege log identifying all such documents, in accordance with Fed R. Civ. P. 26 and L.U.Civ.R. 26. Should Plaintiffs wish to challenge a privilege claim as to any documents on the Legislators' privilege logs, Plaintiffs must file a motion identifying the specific documents to which they contest the claim of privilege and setting forth their arguments for production under the Rodriguez factors and otherwise. After briefing on any such motion has been completed, the Court will, if necessary, conduct an in camera review, in whole or part, and rule on the motion.

No. 21-60312

the statement that the magistrate judge "will adjudicate" any privilege dispute is the proposition that the magistrate judge *has not yet* done so. Any dispute over the application of legislative privilege to the withheld discovery has, as of this appeal, not yet been decided by the district court.

Finally, it is worth noting that what the majority claims the magistrate judge ordered is simply not possible under the Federal Rules. Rule 45(e)(2) provides that any person withholding subpoenaed information under a claim of privilege "must: (1) expressly make the claim; and (2) describe the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim." That latter requirement of Rule 45(e)(2) is, of course, that of a producing a privilege log. Without the information contained in a privilege log, the Commissioners cannot "asses the claim" and the district court cannot adjudicate any dispute they might have with the Legislators' assertion. Simply put, there cannot be an order to produce withheld discovery without a privilege log because the parties and the court lack the information needed to determine whether the privilege applies to the withheld discovery. *See Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) ("[T]he assertion of privilege . . . must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim."); *Peacock v. Merrill*, No. 08-01-B-M2, 2008 WL 687195, at *3 (M.D. La. Mar. 10, 2008) ("Without . . . the privilege log, it is not possible for Peacock to legitimately contest the asserted privilege and for the Court to rule intelligently upon whether the claim of privilege should be sustained."). That there can be no adjudication without a privilege log is why the failure to submit a privilege log may result in waiver, rather than an adverse determination on the merits that the privilege does not apply. *See EEOC v.*

---

It is nonsensical to read the magistrate judge's order as both ordering the production of discovery and also stating that it will do so only after a motion to compel and full briefing.

No. 21-60312

*BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017); Fed R. Civ. P. 26, advisory committee's note to 1993 amendment. In this particular case, no one—not the Commissioners, not the district court, not the majority—know whether the discovery the Legislators are withholding contains communications shared with third parties outside the sphere of legislative activity. Yet this is precisely the determination that the majority claims the magistrate judge erroneously made. How the majority knows that the withheld discovery was not shared with third parties for non-legislative purposes when it too lacks this information is beyond comprehension.

Because it is both obvious from the face of the order itself and a necessary conclusion from the procedural rules governing assertions of privilege in discovery, it is clear that the order appealed only directs the Legislators to produce a privilege log. I disagree with the majority's imagining that there is more. Accordingly, I view the majority's opinion that the magistrate judge's statements regarding the scope of legislative privilege were "overbroad" as an advisory opinion that Article III does not empower us to render. Maj. Op. at 11.

I respectfully dissent from Section III of Judge Elrod's opinion, finding appellate jurisdiction, concur in Section IV finding the Commissioners have standing, concur in Section IV.A finding that the Legislators must submit a privilege log to sustain their assertions of legislative privilege, and dissent from Section IV.B's advisory opinion reversing the district court's "broad pronouncement" about the scope of that privilege. Maj. Op. at 12.

No. 21-60312

STUART KYLE DUNCAN, *Circuit Judge*, concurring in part and dissenting in part:

While I agree that we have appellate jurisdiction, *see* Elrod Op. at 4–6, I respectfully disagree that the individual Commissioners have standing, *see id.* at 6–10; *see also* Dennis Op. at 1–2. In the majority's view, the Commissioners are personally injured because eliminating the JMAA will cut off their expense accounts. No precedent supports that theory of standing. *Per diems* are perks tethered to public office, not private rights whose loss personally injures the officeholder. So, instead of remanding for further proceedings in this now-seven-year-old intrastate political squabble, I would reverse and render judgment dismissing the Commissioners' claims.

The Commissioners claim SB 2162 violates the Equal Protection Clause by "abolish[ing] the JMAA and thereby terminat[ing] their employment as Commissioners on the basis of race." Am. Compl. ¶ 140. The majority decides the Commissioners have standing to press these claims based on allegations that they are "entitled to receive a *per diem* for their service and a travel reimbursement that allows them to obtain specialized training in airport administration." Elrod Op. at 7; *see* Am. Compl. ¶ 142. It also suggests the Commissioners are injured by the loss of "status and authority" caused by the elimination of the JMAA and, along with it, their positions. Elrod Op. at 7. The majority cites no precedent supporting its view that these asserted harms qualify as personal injuries to the individual Commissioners.[1]

---

[1] JUDGE ELROD's opinion relies mostly on general standing precedents that do not address legislators' standing. *See* Elrod Op. at 7 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)); *id.* at 8 (citing *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir. 2017)); *id.* at 9 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The only cited opinion addressing legislators' standing is a concurrence in our court's prior opinion

No. 21-60312

The only case the majority discusses, *Raines v. Byrd*, 521 U.S. 811 (1997), undermines its view. *See* Elrod Op. at 8. *Raines* teaches that individual lawmakers can't sue to vindicate "a loss of political power" but only a "loss of [a] private right." 521 U.S. at 821. That principle defeats the Commissioners' standing. Each loss they assert is political, not personal. They have no "private right" to the perquisites of office. Such benefits exist "solely because [the Commissioners] are Members of [the JMAA]." *Ibid.* The minute they leave office, the perks end. *See ibid.* ("If one of the Members were to retire tomorrow, he would no longer have a claim; the claim would be possessed by his successor instead."). Their loss "thus runs with the [Commissioner's] seat, a seat which the [Commissioner] hold[s] as trustee for his constituents, not as a prerogative of personal power." *Ibid.* (cleaned up). Translation: Commissioners enjoy these perks only because they are public servants, not because they have a private right to expense the City of Jackson for a New York Strip or a trip to Vegas.

The majority seeks support in this statement from *Raines*: "appellees do not claim that they have been deprived of something to which they *personally* are entitled—such as their seats as Members of Congress after their constituents had elected *them*." Elrod Op. at 8 (quoting *Raines*, 521 U.S. at 821). But the majority divorces this statement from its context. *Raines* was discussing *Powell v. McCormack*, 395 U.S. 486 (1969), where a Congressman was allowed to "challenge . . . his exclusion from the House of Representatives (and his consequent loss of salary)." *Raines*, 521 U.S. at 820–21 (citing *Powell*, 395 U.S. at 496, 512–14). As *Raines* explained, there

---

in this case. *See* Elrod Op. at 7 (citing *Stallworth v. Bryant*, 936 F.3d 224, 232–33 (5th Cir. 2019) (Higginbotham, J., concurring)). But that non-precedential opinion cites no authority for its view that a Commissioner's loss of "status and authority" as a public official qualifies as a personal injury for Article III purposes.

No. 21-60312

was standing in *Powell* only because Congressman Powell had been "singled out for specially unfavorable treatment as opposed to other Members." *Id.* at 821. The Court distinguished Powell's personal harm from a claim of "institutional injury, which necessarily damages all Members of Congress and both Houses of Congress equally." *Ibid* (cleaned up).

The Commissioners' asserted injuries differ critically from the injury in *Powell*. Congressman Powell was excluded from his seat by a House majority after a subcommittee found he had committed financial improprieties as a committee chairman. *See Powell*, 395 U.S. at 489–93. He could therefore sue to redress this personal injury to him (and to his constituents, who also sued). *Id.* at 493; *see also Raines*, 521 U.S. at 820–21. By contrast, the Commissioners do not allege they have been singled out for "specially unfavorable treatment." *Raines*, 521 U.S. at 821. Rather, their claimed injury is that the JMAA itself has been eliminated and, along with it, their positions. This is what *Raines* described as an "institutional injury . . . which necessarily damages all [Commissioners] equally." *Ibid.*; *see also Kerr v. Hickenlooper*, 824 F.3d 1207, 1214 (10th Cir. 2016) ("[I]ndividual legislators may not support standing by alleging only an institutional injury.") (citations omitted). The Commissioners can't circumvent *Raines* by claiming that sunsetting the JMAA zeroes out their expense accounts. Those benefits "run with the seat" and so aren't "something to which [the Commissioners] *personally* are entitled." *Raines*, 521 U.S. at 821.

By allowing individual lawmakers standing to sue for an institutional injury, the majority puts our circuit out of step with at least three others.[2]

---

[2] *See Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 311 (3d Cir. 2022) ("[I]ndividual legislators lack standing to assert institutional injuries belonging to the legislature as a whole."); *Maloney v. Murphy*, 984 F.3d 50, 64 (D.C. Cir. 2020) (explaining that legislators do not have standing for harms that "befell the institution as a whole and all legislators collectively"); *Kerr*, 824 F.3d at 1216 ("An individual legislator certainly retains

No. 21-60312

And this standing misadventure is notably harmful because it lets a federal court continue to stick its nose into a political spat. *Cf. id.* at 819–20 (standing should be "especially rigorous" when the merits would require "decid[ing] whether an action taken by one of the other two branches of the Federal Government was unconstitutional"); *Ariz. State Legis. v. Ariz. Indep. Redist. Comm'n*, 576 U.S. 787, 859 (2015) (Scalia, J., dissenting) (arguing the Framers "would be *all the more averse* to unprecedented judicial meddling by federal courts with the branches of their state governments"). Various government parties have been fighting over control of the Jackson airport, now going on seven years. *See Stallworth v. Bryant*, 936 F.3d 224, 226–29 (5th Cir. 2019). The case has already spawned two appeals, yet it remains mired in debates over legislative subpoenas. *See id.* at 228–29. And while JUDGE ELROD's opinion correctly fixes one aspect of the district court's overbroad privilege waiver, *see* Elrod Op. at 11–12[3], it sends the case back for more squabbling. Instead of doing that, I would hold the individual Commissioners are not injured in any judicially cognizable manner, which would go a long way toward ending federal involvement in this political dog fight.

      I respectfully dissent.

---

the ability to bring a suit to redress a personal injury, as opposed to an institutional injury.") (citing *Raines*, 521 U.S. at 824 n.7; *Powell*, 395 U.S. at 550).

    [3] I agree with this part of JUDGE ELROD's opinion, even though, left to my own devices, I would find the legislators had no standing to begin with.