No. 21-60312

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**JACKSON MUNICIPAL AIRPORT AUTHORITY; BOARD OF COMMISSIONERS OF THE JACKSON MUNICIPAL AIRPORT AUTHORITY, each in his or her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority; DOCTOR ROSIE L. T. PRIDGEN, in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority; REVEREND JAMES L. HENLEY, JR., in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority; LAWANDA D. HARRIS, in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority; VERNON W. HARTLEY, SR., in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority; EVELYN O. REED, in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority; DOCTOR ROSIE L. T. PRIDGEN, individually as citizens of the City of Jackson, MISSISSIPPI, on behalf of themselves and all others similarly situated; LAWANDA D. HARRIS, individually as citizens of the City of Jackson, MISSISSIPPI, on behalf of themselves and all other similarly situated; VERNON W. HARTLEY, SR., individually as citizens of the City of Jackson, MISSISSIPPI, on behalf of themselves and all others similarly situated; EVELYN O. REED, individually as citizens of the City of Jackson, MISSISSIPPI, on behalf of themselves and all others similarly situated; JAMES L. HENLEY, JR., individually as citizens of the City of Jackson, MISSISSIPPI, on behalf of themselves and all others similarly situated;**

*Intervenors-Appellees*

v.

**JOSH HARKINS; DEAN KIRBY; PHILLIP MORAN; CHRIS CAUGHMAN; NICKEY BROWNING; JOHN A. POLK; MARK BAKER; ALEX MONSOUR**

*Respondents-Appellants*

_____

On Appeal from the United States District Court
for the Southern District of Mississippi
Civil Action No. 3:16-CV-00246-CWR-FKB

**INTERVENORS-APPELLEES' OPPOSITION TO PETITION FOR
REHEARING *EN BANC***

Austin P. Anderson, MA#696414
Scott P. Lewis, MA#298740
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6600

***Attorneys for Intervenors-Appellees***

# TABLE OF CONTENTS

Table of Contents ...................................................................... i

Table of Authorities ................................................................. ii

Introduction ........................................................................... 1

Statement of Facts and Course of Proceedings............................ 1

Argument and Authorities........................................................ 2

    A.    The Panel Majority Correctly Determined that the
          Commissioners Have Standing ................................... 2

          1.    The Commissioners are not asserting
                an institutional injury ....................................... 3

          2.    The fact that there has been turnover in the
                JMAA's membership in the seven years since
                this suit was filed is irrelevant to the standing
                inquiry ........................................................... 7

    B.    The Panel Was Correct to Order a Privilege Log ................... 10

          1.    The Legislators cannot decide the scope
                of their own privilege..................................... 10

          2.    The Legislators' arguments do not change
                the analysis................................................... 11

    C.    There Is No Appellate Jurisdiction to Review an
          Order to Produce a Privilege Log............................. 14

Conclusion ............................................................................ 15

Certificate of Service ............................................................... 17

Certificate of Compliance ........................................................ 18

i

# TABLE OF AUTHORITIES

*Alaska Legislative Council v. Babbitt*
181 F.3d 1333 (D.C. Cir. 1999) ....................................................... 5

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*
576 U.S. 787 (2015) ........................................................................ 3

*Banca Pueyo v. Lone Star Fund IX (US), L.P.*
978 F.3d 968 (5th Cir. 2020) ........................................................ 14

*Carr v. Monroe Mfg. Co.*
431 F.2d 384 (5th Cir. 1970) ................................................... 10, 13

*Cates v. LTV Aerospace Corp.*
480 F.2d 620 (5th Cir. 1973) ........................................................ 15

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*
528 U.S. 167 (2000) ........................................................................ 9

*In re: Hubbard*
803 F.3d 1298 (11th Cir. 2015) ............................................... 13, 14

*Kerr v. Hickenlooper*
824 F.3d 1207 (10th Cir. 2016) ...................................................... 4

*La Union del Pueblo Entero v. Abbott*
68 F.4th 228 (5th Cir. 2023) ........................................................ 10

*Maloney v. Murphy*
984 F.3d 50 (D.C. Cir. 2020) ................................................. 4, 5, 6

*In re: North Dakota Legislative Assembly*
-- F.4th ---, 2023 WL 3831550 (8th Cir. June 6, 2023) ......................... 13, 14

*Overby v. U.S. Fid. & Guar. Co.*
224 F.2d 158 (5th Cir. 1955) ........................................................ 11

*Pool v. City of Houston*
978 F.3d 307 (5th Cir. 2020) .......................................................... 9

*Powell v. McCormack*
395 U.S. 486 (1969)............................................................................ 3

*Raines v. Byrd*
521 U.S. 811 (1997)...................................................................... 3, 4, 5

*Warth v. Seldin*
422 U.S. 490 (1975)............................................................................ 8

*Yaw v. Delaware River Basin Commission*
49 F.4th 302 (3d Cir. 2022)................................................................ 4

The Intervenors-Appellees Commissioners of the Jackson Municipal Airport Authority, in their individual capacities, (the "Commissioners") oppose the petition for rehearing filed by the Respondents-Appellants state legislators (the "Legislators"). This case is not appropriate for rehearing *en banc* under the criteria in Federal Rule of Appellate Procedure 35(a). The panel's opinion involved a straightforward application of well-settled standing and legislative privilege law, and—contrary to the Legislators' assertion—the opinion does not conflict with a decision of any other circuit.

## I.    Statement of Facts and Course of Proceedings

In 2016, the Jackson Municipal Airport Authority ("JMAA") and its members intervened in this action and filed a complaint alleging, among other things, that 2016 Mississippi Senate Bill 2162 ("SB2162") violates the Equal Protection Clause of the U.S. Constitution and the Due Process Clause of the Mississippi Constitution. ROA.560–610. The JMAA is the body that manages and controls Jackson-Medgar Wiley Evers International Airport. ROA.4577–78. Its members are appointed by the mayor and city council of majority-Black Jackson. ROA.4581–82. SB2162 abolishes the JMAA, and replaces it with a regional authority, the majority of the members of which would be appointed by the governor, lieutenant governor, and majority-White counties surrounding Jackson. ROA.4586–87. The Commissioners allege that SB2162 was motivated by racial animus, and issued subpoenas to the

Legislators—each of whom was instrumental in the drafting or passage of SB2162—seeking evidence to support their Equal Protection Claim.  ROA 4586–88, 4733.  The Legislators objected to the subpoena, asserting legislative privilege.  ROA.1530–32.  The Commissioners moved to enforce the subpoenas, and the district court ordered that the Legislators provide a privilege log identifying the documents they are withholding under a claim of privilege.  ROA.3609.  The Legislators appealed, arguing that the Commissioners lacked standing to bring their claims, and that they should not be required to produce a privilege log to substantiate their claims of legislative privilege.  ROA.4824.  The panel confirmed that the Commissioners have standing, and affirmed the district court's order requiring a privilege log.  Panel Op. at 7, 11.  The Legislators now seek rehearing *en banc*.

## II.    Argument and Authorities

### A.    The Panel Majority Correctly Determined that the Commissioners Have Standing

The Commissioners have standing because they have alleged a concrete and particularized injury that is actual and imminent; their alleged injury is caused by the challenged state law; and a favorable ruling would redress their injury.  *See* Panel Op. at 7–10.  In an attempt to avoid this conclusion, the Legislators and the dissent from the panel opinion incorrectly characterize the Commissioners' alleged injury as an "institutional injury," but Supreme Court and other circuit precedent demonstrates it is not.  Further, the current Commissioners will suffer an injury if

2

SB2162 is allowed to take effect, abolishes their positions, and deprives them of the associated benefits—whether or not they were serving on the board at the time the bill was passed.

### 1. The Commissioners are not asserting an institutional injury.

An institutional injury is an injury to the power of an institution itself. *See Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 802 (2015). *Raines v. Byrd*—which all parties agree is the seminal Supreme Court precedent—offers a perfect example: there, individual members of Congress challenged the Line Item Veto Act, claiming that it invaded the prerogatives and the power of Congress, as an institution, through a "diminution of legislative power." 521 U.S. 811, 821 (1997). The Supreme Court held that individual legislators did not have standing based on an injury to the institution of which they were members, as distinguished from an injury to themselves personally. *Id.* at 826 (no standing to challenge "the abstract dilution of institutional legislative power"). *Raines* specifically distinguished an institutional injury from the loss of something "to which [plaintiffs] *personally* are entitled—such as their seats as Members of Congress after their constituents had elected *them*." *Id.* (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)) (emphasis in original). And that is exactly what the Commissioners are challenging here: the loss of *their* seats and the

attendant benefits, to which they are personally entitled after being appointed by the mayor of Jackson. That injury is personal to them, and not institutional.

The three cases that the Legislators claim are inconsistent with the panel's opinion only reinforce the point. Two of them, like *Raines*, deal with an alleged interference with the power and prerogatives of the legislature as a whole, rather than an injury to individual legislators. *See Yaw v. Delaware River Basin Commission*, 49 F.4th 302, 313–14 (3d Cir. 2022) (alleging that challenged action "attempted to exercise legislative authority exclusively vested in the General Assembly"); *Kerr v. Hickenlooper*, 824 F.3d 1207, 1215 (10th Cir. 2016) (plaintiffs alleged law "deprives them of their ability to perform the legislative core functions of taxation and appropriation") (internal quotation omitted). The third case, *Maloney v. Murphy*, 984 F.3d 50, 63 (D.C. Cir. 2020), *vacated*, --- S. Ct. ----, 2023 WL 4163163 (June 26, 2023), rejected a broad conception of "institutional injury" very similar to the one the Legislators are advancing here. Importantly, *Maloney* held that individual legislators had standing to assert an injury—deprivation of certain information to which they were statutorily entitled—despite the fact that they were only entitled to the information by virtue of their status as legislators. *Id*. at 65 (injury can be personal despite being "intrinsically intertwined with" membership in

the institution).[1]  The fact that the Commissioners only receive the benefits at issue because and so long as they are members of the JMAA therefore does not make their injury institutional.

The Legislators also rely heavily on their assertion that the Commissioners' injury must be institutional because it affects all members of the Commission equally, but that argument misapplies the rule from *Raines*.  *Raines* sets out a two-part inquiry: whether the alleged injury is an institutional one that affects all members equally; and whether the alleged injury deprives the plaintiff of something to which he or she is personally entitled.  521 U.S. at 821.  An injury to an institutional prerogative must affect all members equally in order to be "institutional" within the meaning of *Raines*.  *See Alaska Legislative Council v. Babbitt*, 181 F.3d 1333, 1338 n. 3 (D.C. Cir. 1999) (noting that individual legislator may have standing to challenge action denying validity of his vote in relation to votes of his colleagues, *i.e.*, an injury to an institutional prerogative that does not affect all members equally).  But if the plaintiff is deprived of something to which he or she is personally entitled, then the injury is personal and not institutional, regardless of whether it affects all members of an institution.  To be sure, SB2162 would *also* work an institutional injury against the JMAA as a whole by abolishing

---

[1] As this brief was going to print, the Supreme Court vacated the *Maloney* decision as moot because the respondents had voluntarily dismissed their claims.  The *Maloney* court's reasoning remains sound.

it.  But that injury is not the basis of the Commissioners' standing—they seek redress for the loss of the personal benefits they enjoy as a consequence of their positions.

As *Maloney* recognized, an injury may be personal even if it is inextricably tied to the plaintiff's membership in an institution.  984 F.3d at 65 (right that "followed from and was bound up with" status as a legislator nonetheless personal) (citing *Powell*, 395 U.S. at 489).  The dissent in the panel below misapprehended this point when it claimed that the Commissioners' loss of their *per diem* and other benefits was not personal because they were entitled to them only by virtue of their positions on the JMAA.  The dissent reasoned that the benefits belonged to the seat, and not to the individual occupying it.  *See* Panel Op. at 21 (Duncan, J., dissenting).  But of course the same could be said of a salary for a job: you only collect your salary as long as you hold your job, and if you quit, the salary will then be paid to the next person to hold that job.  That does not mean that the money you collect does not belong to you, or that the loss of your salary is not a personal, individualized injury.  The Supreme Court confirmed 50 years ago in *Powell* that a legislator is personally injured by the loss of the salary he would receive by virtue of holding his seat.  395 U.S. at 512–14.  There is no basis to distinguish between a salary and a *per diem*, and the dissent's logic therefore directly conflicts with *Powell*.

2. <u>The fact that there has been turnover in the JMAA's membership in the seven years since this suit was filed is irrelevant to the standing inquiry.</u>

The Legislators' related argument about whether the Commissioners were serving at the time SB2162 was passed, *see* Pet. at 23, was not presented to, argued before, or ruled upon by the panel.  They cannot use their petition for rehearing to pivot to a new argument after finding out that their original arguments have failed.

This issue was first raised in the reply brief the Legislators filed in support of a partial motion to dismiss the appeal, which they submitted six months after the case was taken under advisement following oral argument.  Dkt. #99.  The Commissioners moved to strike that reply brief, or in the alternative requested a chance to brief the new issue.  Dkt. #101.  The panel did not request additional briefing and did not mention the Legislators' new argument anywhere in their opinion.  After issuing its opinion, the panel denied the motions to dismiss and strike as moot.

In any event, there is no legal basis for the Legislators' argument—echoed by *amici curiae*—that the Commissioners must have been serving at the time SB2162 was passed in order to have standing.  If this complaint fails, the Commissioners who are serving at the time the takeover bill goes into effect will be injured by it, and they are therefore the ones who have standing to seek to enjoin its implementation.  Standing is meant to ensure that courts adjudicate live cases or

controversies, and that the parties have the requisite stake in the outcome of the dispute for the adversarial process to function properly. *See Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). Those objectives are served where the current Commissioners, who stand to lose their positions as a consequence of the allegedly unconstitutional law, litigate this suit.

The Commissioners do not allege, and there is no requirement in standing caselaw, that the allegedly unconstitutional law was specifically targeted at the individuals who were serving when it was passed—that the state legislature was intentionally and personally targeting Evelyn Reed, for example, when it passed SB2162. The Commissioners do allege (and the Court must accept as true at this stage) that the law was impermissibly motivated by a desire to take control of the airport away from the JMAA, whose Black members were appointed by the Black mayor and city council of Jackson, and give it to an entity appointed by majority-White state and county officials. ROA.4604–09. Accepting the pleadings as true, the Court should assume at this stage that SB2162 is unconstitutional because it was impermissibly motivated by racial animus. The Legislators nonetheless contend that no one has standing to challenge SB2162, despite the fact that the Commissioners will be personally and particularly harmed by it when it strips them of their positions.

If the state of Mississippi had instead passed a law saying that no Black person shall serve on any local government entity, the officials who would lose their

positions as a consequence of that law would have standing to challenge it, regardless of whether they happened to be serving at the precise moment it was enacted.  The Commissioners have alleged that SB2162 was intended to and does accomplish the same impermissibly race-based ends indirectly.  The successors to the Commissioners who were serving in 2016 are injured in the same way, and have the same standing to challenge SB2162.[2]

The Legislators' contrary position would strip the federal courts of the ability to adjudicate constitutional disputes by virtue of the mere passage of time.  The first copies of the subpoenas at issue here were served in April 2017.  Due in large part to two separate interlocutory appeals by the Legislators, this discovery dispute has dragged on for over six years, and it is no surprise that the membership in the airport authority has changed over that time.  But if simple delay could insulate an unconstitutional law from judicial review, the courts would lose the ability to safeguard citizens' constitutional rights.  A would-be constitutional violator would not even need to rely on time-consuming litigation: a state could pass a law

---

[2] It is true, as the *amici* point out, that the membership of the Board has changed in the 18 months since the panel took this case under advisement, but they are incorrect that this fact creates a standing problem.  *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (standing is determined "at the outset of litigation"); *see also Pool v. City of Houston*, 978 F.3d 307, 311–12 (5th Cir. 2020).  When this case is remanded to the district court and that court's stay is lifted, the current commissioners will be added or substituted as plaintiffs and will re-issue identical subpoenas to the Legislators.  Further, the current commissioners will have exactly the same standing as that which the panel found sufficient for RLTC Wright and Rev. Martin—which is the same standing the original Commissioners had.

prohibiting Black people (or Catholics or women) from serving in public institutions but say that the prohibition does not apply to anyone currently serving, and under the Legislators' reasoning there would never be anyone with standing to challenge that obviously unconstitutional law. The Court should reject that radical proposition.

## B.    The Panel Was Correct to Order a Privilege Log

### 1.  The Legislators cannot decide the scope of their own privilege.

This Court recently reaffirmed in *La Union del Pueblo Entero v. Abbott* that the legislative privilege only applies to documents "within the sphere of legitimate legislative activity"; that it is qualified, not absolute, and must yield in some circumstances; and that it can be waived. 68 F.4th 228, 235–36 (5th Cir. 2023) (internal quotation omitted). The Legislators themselves have conceded that the privilege is not absolute, and that it can be waived. But they nonetheless assert for themselves a privilege that is absolute for all practical purposes, by insulating their privilege claims from any judicial review. Without a privilege log to evaluate the Legislators' claims, the district court would be forced to abdicate to the party asserting the privilege the sole authority to determine when and how that privilege applies. But this Court has already held that government actors do not get to decide the scope of their own privilege. *See Carr v. Monroe Mfg. Co.*, 431 F.2d 384, 388 (5th Cir. 1970) ("'[J]udicial control over the evidence in a case cannot be abdicated to the caprice of'" those asserting governmental privilege; "in fact, the potential for

10

misuse of government privilege . . . is one more factor which strongly suggests the need for judicial arbitration of the availability of the privilege.") (quoting *Overby v. U.S. Fid. & Guar. Co.,* 224 F.2d 158, 163 (5th Cir. 1955)).  It is the responsibility of the courts to control the discovery process and to be the arbiter of disputes; the Legislators cannot avoid judicial review by refusing to provide the minimum information necessary for the court to perform it.[3]

Indeed, this Court in *La Union* relied on a privilege log to evaluate the legislative privilege asserted in that case and determine whether it properly applied to the specific documents at issue.  68 F.4th at 236.  The panel's order that the Legislators produce a log is consistent with *La Union*, and will allow the district court to apply the legal framework described by this Court in that decision.

2.  The Legislators' arguments do not change the analysis.

The Legislators' specific arguments, Pet. at 26–27, 27–28, misrepresent the facts below, but more importantly are premature.  Contrary to their assertions, the Commissioners do not seek only documents related to SB2162, and have never conceded that the documents responsive to the subpoenas necessarily come within the legislative privilege.  The request the Legislators object to (and selectively quote)

---

[3] The Legislators themselves point to the Catch-22 they are trying to create when they claim in their petition that there is no "evidence" of waiver in this case.  Pet. at 29.  There is no evidence of any kind concerning the documents they are trying to keep secret, because they have yet to even identify what those documents are.

seeks "Any and all documents . . . exchanged by . . . you and any person . . . regarding Senate Bill 2162 *and/or* the Jackson-Medgar Evers International Airport." ROA.4733 (emphasis added).  Not every document responsive to that request will necessarily be sufficiently related to the legislative process to come within the scope of the privilege in the first place.  For example, a decision by Southwest Airlines to suspend service at the airport has been offered as a race-neutral justification for SB2162.  A communication between a legislator and a third party that is unrelated to any pending legislation may reveal that the legislator was aware that Southwest's decision had nothing to do with the airport's management, and the justification is therefore pretextual.  That document is not within the sphere of legitimate legislative activity, but is nonetheless responsive and relevant.

More fundamentally, this Court (and the district court) should not have to engage in this exercise in the abstract.  The Legislators' arguments regarding waiver further illustrate why this is true: they contend that waiver occurs when a document is revealed "publicly," but at the same time claim that sharing documents with constituents and other third parties does not constitute a waiver.[4]  Pet. at 28–29.  The Court should not have to imagine what scenarios may or may not constitute waiver without reference to actual documents: once the Legislators produce a privilege log

---

[4] Indeed, the Legislators seem to suggest that a document has to have appeared in the local paper, or be searchable on the Internet, in order for a waiver to have occurred.  Pet. at 13.

and reveal who they have shared the documents with, the district court will have the information necessary to decide in the first instance whether a waiver has occurred on the specific facts of this case.  If they are not required to produce a log, the Legislators get to determine for themselves what the scope of the privilege is and whether a waiver has occurred, without any oversight from the courts.  That position directly conflicts with the principle announced by this Court in *Carr*.  *See* 431 F.2d at 388.

The Legislators are also wrong that the panel decision conflicts with either the 11th Circuit's decision in *In re: Hubbard*, 803 F.3d 1298 (11th Cir. 2015) or the 8th Circuit's decision in *In re: North Dakota Legislative Assembly*, --- F.4th ---, 2023 WL 3831550 (8th Cir. June 6, 2023).

*Hubbard* determined that the claim at issue in that case—a First Amendment challenge to an otherwise constitutional law based on subjective motivation—was not cognizable.  *Id.* at 1312–13.  The evidence sought in that case could not conceivably have been relevant, and there was therefore no reason to allow discovery.  *See id.* at 1313.  *Hubbard*'s reasoning was explicitly limited to the facts of that case, *id.* at 1312 n.13, and has no bearing on the evidence the Commissioners can seek for their Equal Protection claim here, which *requires* an inquiry into legislative motive.

13

There is no conflict with *North Dakota* either.  *North Dakota* actually cited the panel's decision in this case, suggesting that the 8th Circuit does not see any conflict between the two opinions.  2023 WL 3831550 at *2.  Further, unlike the present case, where the district court had no information to determine the question, in *North Dakota* there was no dispute that all of the documents at issue fell within the scope of the legislative privilege.  *Id.*  *North Dakota*, similar to *Hubbard*, also dealt with a claim that did not implicate legislative intent, and specifically distinguished such claims (which would include the Equal Protection claim relevant here) when it determined that the some of the subpoenas at issue should be quashed. *Id.* at *3.  Finally, *North Dakota* actually found on the facts of that case that one of the legislators had waived the privilege with respect to certain documents, and declined to quash the subpoena served on that legislator.  *Id.*  The panel decision requiring a privilege log here, which will allow the district court to determine whether a waiver has occurred, is entirely consistent with *North Dakota*.

## C.     There Is No Appellate Jurisdiction to Review an Order to Produce a Privilege Log

In any event, this case is a poor vehicle to reconsider the Panel's determination of the standing and legislative privilege issues because this Court lacks appellate jurisdiction over this dispute at this stage in the litigation.  This Court's decision in *Banca Pueyo v. Lone Star Fund IX (US), L.P.* establishes that there is no jurisdiction under the collateral order doctrine to review preliminary discovery orders, before the

scope of the dispute is clear. *See* 978 F.3d 968, 973 (5th Cir. 2020). Here, it is too early to know if there will be a dispute over whether and how the privilege applies, because the Legislators have not taken the first step to identify the documents they are withholding. It is possible that the district court will agree that those documents need not be produced, and the Commissioners may decide they have no basis to challenge that determination. In that case, any decision by this Court on the scope of the privilege or the issue of waiver would be purely advisory.

The narrow exception for orders requiring the production of privileged material recognized in *Cates v. LTV Aerospace Corp.* 480 F.2d 620, 622 (5th Cir. 1973) does not apply here: as explained in Judge Dennis's partial dissent from the panel opinion, there was no such order in this case, and indeed there could not have been, because the Legislators have yet to identify a single document they contend is privileged. Panel Op. at 15 (Dennis, J., dissenting).[5]

## III. Conclusion

The Court should deny the petition for rehearing.

---

[5] Further, regardless of the correct interpretation of the magistrate's order, it is only the district court's order that is the subject of this appeal, as the Legislators concede. *See* Pet. at 32 (seeking "reversal of the District Court's order"). The district court's order does not purport to require the production of any documents. ROA.3609; *see also* Panel Op. at 17 (Dennis, J., dissenting).

Respectfully submitted,

JAMES L. HENLEY, VERNON W.
HARTLEY, SR., EVELYN O. REED,
ROBERT MARTIN, LUCIUS WRIGHT

BY: _____ */s/ Austin Anderson* _____
Austin P. Anderson MA#696414
Scott P. Lewis MA#298740
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6600

*Attorneys for Intervenors-Appellees*

June 26, 2023

## CERTIFICATE OF SERVICE

I, Austin P. Anderson, certify that I electronically filed this brief with the

Clerk of the Court, using the electronic filing system, which sent notification of such

filing to the following counsel of record:

Michael Brunson Wallace: mbw@wisecarter.com
Charles Edward Cowan: cec@wisecarter.com
Fred L. Banks, Jr.: banksf@phelps.com
LaToya C. Merritt: merrittl@phelps.com
Elizabeth Baker Murrill: murrille@ag.louisiana.gov
William Trey Jones: tjones:brunini.com
L. Kyle Williams: kyle.williams@brunini.com
Jacob A Bradley: jbradley@brunini.com
Wilson D. Minor: wilson.minor@ago.ms.gov

This, the 26th day of June, 2023.


 */s/ Austin Anderson*
Austin P. Anderson

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.     This response complies with the type-volume limitation of Fed R. App. P. 35(b)(2)(A) because, excluding the portions exempted by Fed. R. App. P. 32(f), it contains 3,823 words, as determined using the word count function in Microsoft Word.

2.     This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully submitted,

BY: */s/ Austin Anderson*
AUSTIN P. ANDERSON
*Attorney for Intervenors-Appellees*

June 26, 2023

18