NO. 21-60312

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

**JACKSON MUNICIPAL AIRPORT AUTHORITY; BOARD OF COMMISSIONERS OF THE JACKSON MUNICIPAL AIRPORT AUTHORITY,** *each in his or her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority***; DOCTOR ROSIE L. T. PRIDGEN,** *in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority***; REVEREND JAMES L. HENLEY, JR.,** *in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority***; LAWANDA D. HARRIS,** *in her official capacity as a Commissioner of the Board of Commissioners of the Jackson Municipal Airport Authority***; VERNON W. HARTLEY, SR.,** *in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority***; EVELYN O. REED,** *in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority***; DOCTOR ROSIE L. T. PRIDGEN,** *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated***; LAWANDA D. HARRIS,** *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated***; VERNON W. HARTLEY, SR.,** *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated***; EVELYN O. REED,** *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated***; JAMES L. HENLEY, JR.,** *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated,*

*Intervenors–Appellees*

**v.**

**JOSH HARKINS; DEAN KIRBY; PHILLIP MORAN; CHRIS CAUGHMAN; NICKEY BROWNING; JOHN A. POLK; MARK BAKER; ALEX MONSOUR**

*Respondents–Appellants*

On Appeal from the United States District Court
for the Southern District of Mississippi,
No. 3:16-cv-00246-CWR-FKB
District Judge Carlton Reeves

**BRIEF OF AMICI CURIAE LIEUTENANT GOVERNOR DELBERT
HOSEMANN, SPEAKER OF THE HOUSE PHILIP GUNN, AND RANKIN
COUNTY, MISSISSIPPI IN SUPPORT OF LEGISLATORS' PETITION
FOR REHEARING EN BANC**

William Trey Jones (MS Bar No. 99185)
L. Kyle Williams (MS Bar No. 105182)
Jacob A. Bradley (MS Bar No. 105541)
Brunini, Grantham, Grower & Hewes, PLLC
The Pinnacle Building
190 East Capitol Street, Ste. 100
Jackson, MS  39201
tjones@brunini.com
kwilliams@brunini.com
jbradley@brunini.com

*Counsel for Amicus Curiae Rankin County,
Mississippi*

Wilson D. Minor (MS Bar No. 102663)
Special Assistant Attorney General
Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205-0220
T: 601.359.6279
wilson.minor@ago.ms.gov

*Counsel for Amici Curiae Lieutenant Governor
Delbert Hosemann and Speaker of the House
Philip Gunn*

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to this Court's Rule 28.2.1, governmental parties need not furnish a certificate of interested persons.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ....................................................................... iii

TABLE OF CONTENTS ................................................................................. iv

TABLE OF AUTHORITIES ..............................................................................v

INTRODUCTION AND INTEREST OF AMICI CURIAE ........................................................1

ARGUMENT ..............................................................................................3

    I.      The Court should reconsider *en banc* whether a privilege log should be required when all but publicly disseminated documents are privileged ....3

    II.     The (former) Commissioners lack standing to pursue their Equal Protection claims and to compel compliance with any subpoena..............8

CONCLUSION .........................................................................................11

CERTIFICATE OF SERVICE..............................................................................13

CERTIFICATE OF COMPLIANCE ..........................................................................14

# TABLE OF AUTHORITIES

*E.E.O.C. v. BDO USA, LLP*, 876 F.3d 690 (5th Cir. 2017)..............................4, 5, 6

*In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015) ....................................................4, 8

*In re North Dakota Legislative Assembly*,
  _ F.4th _, 2023 WL 3831550 (8th Cir. 2023)..........................................................4

*Jackson Mun. Airport Auth. v. Harkins*, 67 F.4th 678 (5th Cir. 2023).............*passim*

*Jackson Women's Health Org. v. Dobbs*,
  2022 WL 507665 (S.D. Miss. Feb. 18, 2022) .....................................................5

*Kentucky v. Graham*, 473 U.S. 159 (1985)...............................................................11

*La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228 (5th Cir. 2023) .............*passim*

*Raines v. Byrd*, 521 U.S. 811 (1997) ...........................................................................9

*Stallworth v. Bryant*, 936 F.3d 224 (5th Cir. 2019)...................................................9

*Tenney v. Brandhove*, 341 U.S. 367 (1951)...........................................................3, 4

*Town of Ball v. Rapides Par. Police Jury*, 746 F.2d 1049 (5th Cir. 1984) .............11

Miss. Const. art. V, § 129 ...........................................................................................1

Fed. R. App. P. 29...................................................................................................1

## INTRODUCTION AND INTEREST OF AMICUS CURIAE

*Amici curiae* perform legislative functions and are entitled to the robust legislative privilege outlined by this Court in its most recent decisions. *See La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 238–39 (5th Cir. 2023). Lieutenant Governor Delbert Hosemann and Speaker of the Mississippi House of Representatives Philip Gunn preside over the legislative proceedings in their respective chambers of the Mississippi Legislature. MISS. CONST. ART. V, § 129. The Board of Supervisors of Rankin County is the duly-elected governing authority for Rankin County, Mississippi, and its members are entitled to the same legislative privilege afforded to state-wide legislators. *See e.g., La Union*, 68 F.4th at 238–39. *Amici* have a compelling interest in obtaining a holding as to privilege logs that is consistent with this Court's adoption of the "necessarily broad" legislative privilege for state and local legislators. *Id.* at 236.

Moreover, Lieutenant Governor Hosemann and the Board of Supervisors of Rankin County are named defendants in the district court litigation underlying this appeal, and, as parties, they have a compelling interest in ensuring that the plaintiffs must prove their standing to bring claims against them and compel compliance with the subpoenas served on the Legislators.[1] In its May 10, 2023

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no party to this appeal's counsel authored this brief in whole or in part, no such party, party's counsel, or person other than the *amici curiae* contributed money intended to fund the preparation or submission of this brief.

opinion, the panel majority held *inter alia* that the Commissioners of the Jackson Municipal Airport Authority ("JMAA"), in their individual capacities ("Commissioners"), had standing to challenge Senate Bill 2162, finding the Commissioners' "alleged injury is concrete because [they] will be deprived of their benefits if they lose their position," with such benefits including *per diem*, travel reimbursements, and the Commissioners' status and authority to "exercise considerable power over the airport by overseeing finances and operations and defining the airport's strategic goals." *Jackson Mun. Airport Auth. v. Harkins*, 67 F.4th 678, 684–85 (5th Cir. 2023). In dissent, Judge Duncan opined that the Commissioners' alleged injuries are institutional, not personal, and the Commissioners "have no 'private right' to" the benefits of office identified by the majority, all of which "exist 'solely because the Commissioners are Members of the [JMAA]." *Id.* at 692.

Rehearing is necessary because, based on the principles announced in the Court's recent legislative-privilege precedent, no privilege log should be required to test the applicability or waiver of the privilege in any case where legislators' intent or motive is at issue. Moreover, as recognized by Judge Duncan, the Commissioners' alleged injuries are inextricably tied to the Commissioners' politically-appointed position and do not constitute the loss of an individualized private right necessary to establish Article III standing.

## ARGUMENT

### I.  The Court should reconsider *en banc* whether a privilege log should be required when all but publicly disseminated documents are privileged.

*Amici* agree with this Court's recent holdings that the privilege afforded state and local legislators is "necessarily broad," does not "yield" in cases where the legislators' motive or intent is at issue, and is waived only for documents publicly disseminated by such legislators.  *See La Union*, 68 F.4th at 235–40.  *Amici* contend however that, given the Court's holdings as to the scope, applicability, and waiver of the privilege, state and local legislators should not be required to create a privilege log in any case where the motive or intent of a legislative body or individual legislators is at issue.

Compelling such a log is inconsistent with the primary purpose of the legislative privilege (to prevent legislators from being "subjected to the cost and inconvenience and distractions" of civil litigation) and is unnecessary to test the merits of the privilege given this Court's recent holdings. *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951).  Under this Court's recent precedent, the only discoverable legislative documents are those "shared publicly," *i.e.* "sen[t] … to third parties *outside* the legislative process." *La Union*, 68 F.4th at 237 (emphasis in original).  The potential existence of this small subset of publicly-available documents does not warrant a burdensome privileged log in every case. Respectfully, the Court should follow other circuit courts of appeals and not

3

require a privilege log in cases where legislative intent or motive is at issue. *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015); *In re North Dakota Legislative Assembly*, _ F.4th _, 2023 WL 3831550 (8th Cir. 2023)

In evaluating whether a privilege log should be required, it is important to consider the critical difference between legislative privilege and other privileges. The first major difference is that most privileges, including the most common attorney-client privilege, are designed to protect the *confidentiality* of the communications. *E.E.O.C. v. BDO USA, LLP*, 876 F.3d 690, 697 (5th Cir. 2017). The primary purpose of the legislative privilege, however, is to prevent legislators from being "subjected to the cost and inconvenience and distractions" of civil litigation. *Tenney*, 341 U.S. at 376. The legislative privilege "serves the 'public good' by allowing lawmakers to focus on their jobs rather than on motions practice in lawsuits." *La Union*, 68 F.4th at 237. In its two most recent cases, this Court held that "the legislative privilege's scope is necessarily broad," *id.*, to safeguard "the uninhibited discharge of their legislative duty," *Harkins*, 67 F.4th at 687. This is in line with the circuits holding that a privilege log is not required. *Hubbard*, 803 F.3d at 1310 ("[o]ne of the privilege's principle purposes is to ensure that lawmakers are allowed to 'focus on their public duties'"); *North Dakota*, at *1.

The panel's privilege log holding is inconsistent with this Court's upholding a broad legislative privilege because a mandatory privilege log would subject

4

legislators to substantial burdens the legislative privilege is designed to prevent.

The Mississippi Local Rules require a privilege log "that contains *at least* … the

name of the document," among other things.  L.U. Civ. R. 26(e).  Searching for

and listing every document to be included on a privilege log would, itself, be a

burdensome and time-consuming endeavor.  For example, in a recent case where

the Mississippi Senate, Mississippi House of Representatives, and three senators

were served with subpoenas seeking documents relevant to abortion legislation, the

Chief Information Office of the Mississippi Legislative Office testified that

performing searches for responsive documents on "government-issued email

accounts would take approximately 237 hours and that searching and compiling all

ESI from the government servers for each of the legislators would require

approximately another 18 to 25 hours."  *Jackson Women's Health Org. v. Dobbs*,

2022 WL 507665, at *2 (S.D. Miss. Feb. 18, 2022); *see also* Legislators' Petition

at 15 (listing cases).

 Moreover, legislators' undertaking the burden of creating a privilege log is

wholly unnecessary given this Court's recent precedent.  The purpose of a

privilege log is to "provide sufficient information to permit courts and other parties

to 'test the merits of' the privilege claim."  *BDO USA*, 876 F.3d at 697 (brackets

omitted).  A list of responsive documents and detailed information regarding those

documents may be necessary to "test the merits" of other privileges like the

attorney-client privilege because those privileges are "highly fact-specific." *Id.* at 695. But that is not the case with legislative privilege under this Court's recent precedent.

Under this Court's three-part analysis for legislative privilege, a privilege log is not necessary to "test the merits" of a legislative privilege claim because the only documents relevant to the legislation at issue that would *not* be privileged are those "shared publicly," i.e. disseminated "to third parties *outside* the legislative process." *See Harkins*, 67 F.4th at 687; *La Union*, 68 F.4th at 235–40. In *La Union*, this Court created a well-reasoned three-part analysis for legislative privilege that is *not* fact-intensive. First, as to scope, this Court holds that legislative privilege protects from disclosure any documents, communications, or "actions that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'" *La Union*, 68 F.4th at 235. Second, as to whether the privilege "yields," this Court holds that the privilege is "absolute" in a case such as this where a plaintiff "probes legislators' subjective intent" or motive, even when "when constitutional rights are at stake" or there is a "claim of an unworthy purpose." *Id.* at 238. It follows that as a categorical matter the privilege applies and is absolute in any civil case where the legislators' individual or collective motives are at issue, even where the motive or intent is alleged to be unconstitutional or unlawful.

A privilege log is also unnecessary to "test the merits" of the third prong of the privilege analysis (waiver) because the Court in *Harkins* and *La Union* held the legislative privilege is waived only in very limited circumstances.  This Court holds that "legislative privilege as to certain documents is waived when the Legislator *publicly* reveal[s] those documents."  *Harkins*, 67 F.4th at 687.  And "*publicly* reveal" is very narrow.  The privilege is waived only when a legislator sends "privileged documents to third parties *outside* the legislative process."  *La Union*, 68 F.4th at 237.  The privilege is not waived when a legislator forwards documents to third parties (interest groups, constituents, or anyone else) as part of the legislative process.  This Court's analysis in *La Union* equates "publicly reveal" with documents being "publicly available."  *Id.* "Where the documents have been shared with some third party – but haven't been shared publicly – the waiver argument fails."  *Id.*

Respectfully, the panel opinion erred in holding that "a privilege log is necessary to determine which of the requested documents and communications are protected by legislative privilege."  *Harkins*, 67 F.4th at 687.  The *Harkins* panel reasoned that a privilege log "would not be useless" because (1) "statements that have no connection whatsoever" to the legislation at issue are not privileged, and (2) the privilege "is waived when the Legislator *publicly* reveal[s] those documents."  *Id.* at 686–87.  But documents with "no connection whatsoever" to

the legislation at issue in the case are, by necessity, not relevant and not discoverable. *See Hubbard*, 803 F.3d at 1311 ("Any material, documents, or information that did not go to legislative motive [are] irrelevant …, while any that did go to legislative motive [are] covered by the legislative privilege"). And there is no need for legislators to undertake the considerable burden of a privilege log to substantiate that the privilege has not been waived. The privilege is not waived so long as the documents are not publicly disseminated. Alternatives less unreasonably burdensome than a privilege log are available to identify documents that have been publicly disseminated. *See La Union*, 68 F.4th at 237 ("The very fact that Plaintiffs need discovery to access these documents shows that they have not been shared publicly").

*Amici* respectfully request that the Court grant the Legislators rehearing *en banc* to reevaluate whether a privilege log is required.

**II.    The (former) Commissioners lack standing to pursue their Equal Protection claims and to compel compliance with any subpoena.**

*Amici* concur in the arguments advanced in the Legislators' petition for rehearing regarding the Commissioners' lack of standing to pursue their race-based claim under the Equal Protection Clause, which align substantially with Judge Duncan's reasoning set forth in his dissenting opinion. The panel majority's conclusions on standing are incorrect for the additional reason that the

Commissioners, now former-commissioners, lack standing to compel compliance with any subpoena.

To have standing at the outset, the Commissioners "must have suffered an injury in fact"—"an invasion of a legally protected interest"—that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Stallworth v. Bryant*, 936 F.3d 224, 229–30 (5th Cir. 2019). The Commissioners failed to satisfy their burden of "strict compliance" with either the injury or redressability prongs of this standard. *Raines v. Byrd*, 521 U.S. 811, 819 (1997).

The Legislators were served with *subpoenae duces tecum* by the Commissioners, "individually . . . on behalf of themselves and all members of the City of Jackson Class," related to their "claim that Senate Bill 2162 violates the rights to equal protection under the law for all individual citizens in the City of Jackson." If the Commissioners lack standing to pursue their Equal Protection claim, the subpoenas issued in furtherance of that claim cannot be enforced. *Stallworth*, 936 F.3d at 232.

The panel majority analyzed the standing of the Commissioners in their individual capacities, focusing on plaintiffs' alleged personal injuries *as Commissioners*. The panel majority held that the Commissioners' "alleged injury is concrete because the Commissioners will be deprived of their benefits if they

lose their position" and "that the potential loss of benefits that comes with the Commissioners' position is sufficiently concrete to support the Commissioners' standing." *Harkins*, 67 F.4th at 684–85. The panel majority also held that plaintiffs' "alleged injury is also sufficiently particularized because the Commissioners would suffer a personal injury from losing their seats," and "enjoining enforcement of SB 2162" would redress plaintiffs' alleged injury. *Id.* at 685. "[B]ased on the operative complaint," the panel majority concluded that "the Commissioners have standing in this case." *Id.* at 686.

To the extent that the Commissioners assert their claims in their "individual" capacities, it is only the named "individual capacity" Commissioners who matter—Lawanda D. Harris,[2] Robert Martin, Lucius Wright, Evelyn O. Reed, and Vernon Hartley. *None* of those individuals are current commissioners on the JMAA Board.[3] Stated differently, the Commissioner plaintiffs' time in office has come and gone, and none of them have suffered (or are capable of suffering) any of the alleged injuries asserted in the operative complaint; none of their alleged injuries can be redressed by enjoining Senate Bill 2162's enforcement. The panel majority's reasoning relied entirely on the notion that the Commissioners are current commissioners and would lose their positions and the benefits tied to those

---

[2] Upon her voluntary motion, Ms. Harris has since been dismissed from the district court litigation underlying this appeal.

[3] About JMAA, JACKSON MUNICIPAL AIRPORT AUTHORITY.COM, https://jmaa.com/corporate/about-jmaa/leadership-2/ (last visited June 13, 2023).

positions if the JMAA is abolished, but they have long since left their positions at the JMAA. Thus, the Commissioners lacked standing for the reasons stated in the Legislators' petition for rehearing and Judge Duncan's dissent, and because the now-former Commissioners lack standing to compel the Legislators to comply with the subpoenas.

To the extent the Commissioners assert Equal Protection claims in their "official" capacities, the Commissioners also lack standing. Claims brought by government officials in their official capacities are viewed as being made by the governmental body of which the plaintiff is, or was, an officer. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). And a state-created government entity like the JMAA lacks standing to sue the state or other state-created government entities under the Fourteenth Amendment. *Town of Ball v. Rapides Par. Police Jury*, 746 F.2d 1049, 1052 (5th Cir. 1984) (collecting cases).

## CONCLUSION

*Amici* respectfully request that this Court grant a hearing *en banc* to adopt a privilege log rule consistent with its recent holdings on the scope and waiver of legislative privilege and to address the Commissioners' Article III standing.

Dated:  June 21, 2023.

Respectfully submitted,

/s/  Jacob A. Bradley
William Trey Jones, III (MS Bar No. 99185)
L. Kyle Williams (MS Bar No. 105182)
Jacob A. Bradley (MS Bar No. 105541)
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building
190 East Capitol Street, Ste. 100
Jackson, MS  39201
T:  601.948.3101
F:  601.960.6902
tjones@brunini.com
kyle.williams@brunini.com
jbradley@brunini.com

**Counsel for Amicus Curiae Rankin County, Mississippi**

/s/ Wilson D. Minor
Wilson D. Minor (MS Bar No. 102663)
Special Assistant Attorney General
MISSISSIPPI ATTORNEY GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
T: 601.359.6279
wilson.minor@ago.ms.gov

**Counsel for Amici Curiae Lieutenant Governor Delbert Hosemann and Speaker of the House Philip Gunn**

## **CERTIFICATE OF SERVICE**

I, William Trey Jones, certify that on June 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system, which served a copy upon all counsel of record.

Dated: June 21, 2023.

*/s/ Jacob A. Bradley*

Jacob A. Bradley (MS Bar No. 105541)

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

1.      This document complies with Rules 29(b)(4) and 32(a)(7)(B) of the Federal Rules of Appellate Procedure because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this document contains 2,537 words.

2.      This document complies with the typeface requirements of Rule 32(a)(5) and 5TH CIR. R. 32.1 and the type-style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point, Times New Roman font, except for footnotes, which are in 12 point Times New Roman font.

Dated: June 21, 2023.

*/s/ Jacob A. Bradley*
Jacob A. Bradley (MS Bar No. 105541)