# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2024

Lyle W. Cayce
Clerk

No. 21-60312

JACKSON MUNICIPAL AIRPORT AUTHORITY; BOARD OF COMMISSIONERS OF THE JACKSON MUNICIPAL AIRPORT AUTHORITY, *each in his or her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; DOCTOR ROSIE L. T. PRIDGEN, *in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; REVEREND JAMES L. HENLEY, JR., *in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; LAWANDA D. HARRIS, *in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; VERNON W. HARTLEY, SR., *in his official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; EVELYN O. REED, *in her official capacity as a Commissioner on the Board of Commissioners of the Jackson Municipal Airport Authority*; DOCTOR ROSIE L. T. PRIDGEN, *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*; LAWANDA D. HARRIS, *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*; VERNON W. HARTLEY, SR., *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*; EVELYN O. REED, *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*; JAMES L. HENLEY, JR., *individually as citizens of the City of Jackson, Mississippi, on behalf of themselves and all others similarly situated*,

*Intervenors—Appellees*,

*versus*

Josh Harkins; Dean Kirby; Phillip Moran; Chris Caughman; Nickey Browning; John A. Polk; Mark Baker; Alex Monsour,

*Respondents—Appellants.*

———————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-246

———————————————————

Before Richman, *Chief Judge*, and Jones, Smith, Stewart, Dennis, Elrod, Haynes, Higginson, Willett, Ho, Duncan, Engelhardt, Oldham, Douglas, and Ramirez, *Circuit Judges*.[*]

Jennifer Walker Elrod, *Circuit Judge*, joined by Richman, *Chief Judge*, and Jones, Smith, Stewart, Dennis,[†] Haynes, Higginson, Willett, Ho, Duncan, Engelhardt, Oldham, Douglas, and Ramirez, *Circuit Judges*:

The Jackson-Medgar Wiley Evers International Airport in Jackson, Mississippi, has long been operated by the Jackson Municipal Airport Authority, whose five commissioners are selected by the city government. In 2016, the five commissioners then in office intervened in a lawsuit seeking to enjoin the enforcement of a Mississippi law—S.B. 2162—that would have abolished the Jackson Municipal Airport Authority and replaced it with a regional authority. During discovery, the intervenors subpoenaed several non-party state legislators who participated in drafting and passing S.B. 2162. The district court issued a discovery order, which the legislators now appeal.

However, none of the original five commissioners that originally intervened in this lawsuit are still in office. The same goes for two additional

———————————————

[*] Judges Southwick, Graves, and Wilson are recused and did not participate in this decision.

[†] Judge Dennis concurs in the judgment only.

commissioners that were added in plaintiffs' Amended Complaint. As of today, none of the Jackson Municipal Airport Authority's current commissioners are parties to or intervenors in this lawsuit. Neither party disputes this.

Mootness doctrine requires that "litigants retain a personal interest in a dispute at its inception and throughout the litigation." *Tex. Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 204 (5th Cir. 2010) (citation and internal quotations omitted). Because mootness implicates our jurisdiction, it can be raised for the first time at any point, including on appeal. *Id.* A claim is moot if it becomes "impossible for the court to grant any effectual relief whatever to a prevailing party." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (citation and internal quotation marks omitted); *see Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 365 (5th Cir. 2003). When a claim becomes moot on appeal, the appeal must be dismissed. *Church of Scientology*, 506 U.S. at 12.

The claims of the former commissioners who intervened in this lawsuit are moot. They no longer have any personal interest in this dispute because they no longer stand to lose their seats should S.B. 2162 be enforced. The commissioners urge that we apply the so-called "capable of repetition, yet evading review" exception to mootness. But that exception requires "a reasonable expectation that the *same* complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (emphasis added) (citation and internal quotation marks omitted); *see Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006). The commissioners have not shown that they might reasonably expect to be reappointed to their former offices, and without such a showing, this exception does not apply.

No. 21-60312

This litigation has been ongoing for almost eight years, has come before this court three times, and has now seen four oral arguments. The district court should act forthwith to determine whether, given that all of the commissioners' claims are moot, it may nonetheless exercise jurisdiction over the case. *See Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

\*    \*    \*

Accordingly, the appeal is DISMISSED AS MOOT.

No. 21-60312

James L. Dennis, *Circuit Judge*, joined by Higginson and Ramirez, *Circuit Judges*, concurring in the judgment:

I concur in the judgment dismissing this appeal, but I do so for the reasons stated in my panel dissent because we lack appellate jurisdiction to review the at-issue order to produce a privilege log. *See Jackson Mun. Airport Author. v. Harkins*, No. 21-60312, 2023 WL 5522213, at *7-9 (5th Cir. Aug. 25, 2023) (Dennis, J., dissenting), *vacated*, 78 F.4th 844 (5th Cir. 2023).

No. 21-60312

James C. Ho, *Circuit Judge*, joined by Stewart, Elrod, Higginson, and Ramirez, *Circuit Judges*, concurring:

I agree that this appeal is moot. I write separately to respond to the suggestion that the individual commissioners lack Article III standing to bring their claims. *See Jackson Mun. Airport Auth. v. Harkins (JMAA)*, 2023 WL 5522213, \*9 (5th Cir.) (Duncan, J., concurring in part and dissenting in part).

## I.

It's no small thing to tell a litigant that the court will not even consider the merits of their claim—that it doesn't matter if a defendant has broken the law and injured others—because the Constitution forbids us from granting you any relief. Of course, we're duty bound to do it when the law compels that result. But when it does, it's incumbent upon us to spell out what principles require dismissal for lack of standing. It should go without saying that every member of our court agrees that we apply the same Article III principles whether you're black or white, Republican or Democrat, environmentalist or evangelical. It should likewise be beyond dispute that we apply the same standing rules no matter what we think of the merits of the underlying claim. Standing is orthogonal to merits. So we must always be careful not to conflate our views on one with our views on the other. *See*, *e.g.*, *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (Article III standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal"); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) ("one must not 'confuse weakness on the merits with absence of Article III standing'") (quoting *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011)) (cleaned up).

Economic injury is a quintessential harm that federal courts have long been empowered to remedy. *See*, *e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("[C]ertain harms readily qualify as concrete injuries under

No. 21-60312

Article III.  The most obvious are traditional tangible harms, such as physical harms and monetary harms.").  And that's precisely what this case presents.  Loss of compensation indisputably constitutes Article III injury.[1]

## II.

It's been suggested, however, that we should set that principle aside here, because it ought to be entirely up to the discretion of legislators how to structure state and local government.  Repealing or restructuring an agency or board may well result in pocketbook injury to the board members or agency leaders—but that's an "institutional injury," we're told, so it's not susceptible to Article III review.  *See JMAA*, 2023 WL 5522213, at *11 (Duncan, J., concurring in part and dissenting in part) ("[The Commissioners] are seeking to stop the abolition of the JMAA, pure and simple.  That's an institutional injury. . . . That should stop their lawsuit in its tracks.").

This theory is premised on *Raines v. Byrd*, 521 U.S. 811 (1997).  *See JMAA*, 2023 WL 5522213, at *11 (citing *Raines*).  But *Raines* involved a constitutional challenge by members of Congress to the Line Item Veto Act.  521 U.S. at 814–16.  So it concerned the official legal powers—not the personal, private compensation—of members of Congress.  *Id.* at 821.  It involved no allegation of any economic injury to any plaintiff.  *See id.* ("[A]ppellees' claim of standing is based on a loss of political power, not loss of any private right, which would make the injury more concrete.").

---

[1] It's also been suggested that the loss of even an entirely unpaid volunteer position in government can trigger judicial review.  *See, e.g.*, *Barton v. Clancy*, 632 F.3d 9, 24–26 (1st Cir. 2011) (collecting cases).  We need not address that question here, because the positions at issue in this case include per diem compensation.

No. 21-60312

To invoke *Raines* here, then, would require a dramatic—and to my mind, unwarranted—extension of that decision.

Suppose we accept the asserted principle that federal courts must leave it entirely to legislators to decide how they wish to re-structure state and local government. Presumably we'd apply that same principle to the federal government as well. So suppose Congress eliminates or reduces salaries for every federal judge who serves on a particular court. Counsel wisely conceded that those judges would have standing to challenge that action. Oral Argument at 13:55–15:15. That's because deprivation of compensation plainly constitutes cognizable injury under Article III—not institutional injury beyond the remedial authority of the federal judiciary. That's how the Supreme Court was able to grant relief to members of all three branches of the Federal Government for suits based on loss of compensation. *See, e.g.*, *Powell v. McCormack*, 395 U.S. 486, 496–500, 550 (1969) (member of Congress); *Humphrey's Executor v. United States*, 295 U.S. 602, 618, 632 (1935) (Presidential appointee); *United States v. Hatter*, 532 U.S. 557, 564, 581 (2001) (federal judges). *See also Myers v. United States*, 272 U.S. 52, 106, 176 (1926) (Presidential appointee).

Indeed, *Raines* itself concedes as much. It expressly notes that, although the plaintiff in *Myers* lost on the merits, he had "traditional Article III standing" for his claim based on "lost salary." 521 U.S. at 827. *See also id.* at 820–21 (noting that the plaintiff in *Powell* "presented an Article III case or controversy" based on "loss of salary").

## III.

This case involves daily per diems, not annual salaries. But that's a distinction without a difference, as far as standing analysis is concerned.

Certainly, there's no *de minimis* exception to economic injury under Article III. *See, e.g.*, *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021)

No. 21-60312

(holding that nominal damages are sufficient to redress Article III injury and noting that "petitioners still would have satisfied redressability if instead of one dollar in nominal damages they sought one dollar in compensation for a wasted bus fare to travel to the free speech zone"); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *California v. Texas*, 593 U.S. 659, 692 (2021) (Alito, J., dissenting) ("[E]ven a small pocketbook injury—like the loss of $1—is enough."). Again, counsel wisely conceded during oral argument that if, rather than repealing judicial compensation altogether, Congress simply reduced annual judicial salaries by $100, there would still be Article III standing. Oral Argument at 15:00–15:06.

Counsel nevertheless contends that daily per diems are different, because if you no longer have a job to do, then you no longer have a business trip to take—so you no longer need the per diem that goes along with it. Oral Argument at 15:03–15:11 ("Any salary reduction I think would be standing. Any per diem reduction because you don't go to court, no standing.").

But I have trouble seeing the logic. For one thing, we could say the same about salary. If you lose your job, you get your time back. But we would never say that loss of salary isn't actionable—it's concededly Article III injury.

Moreover, everyone has to eat—whether they're on a business trip or not. Suppose I eat lunch every day at McDonald's. If I serve on a board and thereby receive per diem on any business trip, then my trip to McDonald's is free. (What's more, this case involves a fixed $40 per diem, on top of reimbursement for actual travel expenses, so I'd get to pocket the difference. *See* Miss. Code Ann. §§ 25-3-69, 61-3-13(1).)

But if the board is eliminated, and my trip is cancelled, I have to pay for all of my daily Big Macs out of my own pocket. (Moreover, many people

No. 21-60312

may decide to eat more expensive meals when covered by per diem than they would when eating on their own dime—a fact that, of course, cuts even further in favor of standing.)

So loss of per diem constitutes pocketbook injury—just as readily as loss of salary, corporate expense account, company car, health care benefit, pension, or any number of other job perks.

\* \* \*

Accordingly, I would hold that loss of per diem constitutes economic injury sufficient to establish Article III standing.